# W. W. & W. H. RUNKLE v. THE HARTFORD INSURANCE COMPANY, Appellant.

**Insurance:** DISSOLUTION OF PARTNERSHIP: *Change of possession— Court and jury.* In an action on a fire policy, issued to a firm of two members, defendant claimed that the firm was dissolved before the loss, and it appeared that the partners had agreed on a division of their stock of goods between them, as neither was able to buy the other out; that persons selected by them placed the goods in two piles, and those that were to go to one of them were moved into a building across the street, while the other partner remained in the possession of the other half of the goods, and about one hundred dollars' worth, which had not been divided at the time of the loss. Plaintiffs claimed that it was agreed between the partners that no dissolution should take place until the debts were paid, or each had been indemnified against paying more than his share, and that this had not been done. *Held*, that whether there was a dissolution, was a mixed question of law and fact, for the jury, under proper instructions; and such dissolution is not such change of possession, as to either parcel, as will work a forfeiture under a clause against change of possession or ownership, contained in a policy upon the stock as a whole. The possession of the property of a firm, by one partner, is the possession of the firm, until dissolved, within the meaning of a fire policy.

INCREASE OF HAZARD: *Court and jury.* Such division of the stock cannot be said, as a matter of law, to increase the hazard.

FALSE SWEARING. It is not error to refuse to submit an interrogatory asking if certain sworn statements furnished the company by the assured were false, where it is clear that, if false, they were not made with intent to defraud.

*Same.* The false swearing which will avoid a policy of insurance must be done willfully and knowingly, and with intent to defraud the company.

*Same.* In an action on a fire policy, it appeared that the insured stated in their proofs of loss that they could not set out specifically, the items and the character of the goods destroyed by fire. Defendant claimed that the statement was untrue, because they had recently taken an inventory. *Held*, that if it was necessary for the insured to make such itemized list, it was not error to refuse to submit an interrogatory requested by the defendant, asking the jury to state whether the insured had such inventory.

SPECIAL FINDINGS:   *Proof of loss.*   In an action on a fire policy, where the defendant claims that the proofs of loss contain false statements, it is not error to refuse to submit to the jury an interrogatory which relates to statements made to defendant's agent, and not to such proofs of loss.

Special Interrogatories:   TO BE ULTIMATE.   Where an answer to an interrogatory is requested by defendant, if made as defendant claims it should be, will not be in conflict with a general verdict for plaintiffs, it need not be submitted to the jury.

*Same.*   The court is not bound to submit interrogatories for findings of fact not necessarily determinative of a case, nor to submit particular questions not ultimate in their nature, or which could not well be considered without danger of conclusion or misrepresentation, and which if answered as the party submitting their claims, they should be, would not be conclusive.

SERVICE OF PROOF OF LOSS.   Where all that the policy or the statutes require, is that assured shall render the company proof of loss, no proof of service is required where, upon notice to produce, counsel for the company hands them to plaintiff's attorney, during the trial, and the latter then introduces them in evidence.

EVIDENCE:   *Objections to proof of loss.*   It is no objection to the admission of proofs of loss that they contain untrue statements.

EXAMINATION.   Objections to questions calling for mere repetition of the testimony of a witness are properly sustained.

Pleading:   CONFESSION AND AVOIDANCE.   Where a reply in confession and avoidance, by reasonable implication, admits the facts sought to be avoided, it is sufficient.

SAME.   Where it is sought to avoid statements made by plaintiff, which are set out in the answer, on account of fraud practiced by defendant, a reply which contains a general statement of facts constituting the fraud relied on in avoidance, and a general recital of the statements sought to be avoided, is sufficient under the rule.

Demurrer and Motion:   INCONSISTENT.   While it is true that a general denial and a plea in confession and avoidance, are inconsistent, it cannot be determined on demurrer, that the denial precludes the implying of a confession.   Inconsistent defenses may be pleaded and if they are improperly pleaded in a single division or count, demurrer is not the proper attack.

HARMLESS ERROR.   Where an answer sets up no issuable facts, and is, simply, a statement of evidence which defendant has the right to offer in support of an issue tendered by it, no reply is necessary.

6   And if reply is made which contains no defensive matter, and is a mere statement of evidence, the overruling of a demurrer to such reply is harmless error.

*Appeal from Linn District Court.*—Hon. William G. Thompson, Judge.

### Wednesday, October 21, 1896.

Action at law upon a policy of fire insurance. Trial to a jury. Verdict and judgment for plaintiffs, and defendant appeals.—*Affirmed.*

*McVey & Cheshire* and *Rickel & Crocker* for appellant.

*Charles W. Kepler* and *J. W. Jamison* for appellees.

Deemer, J.—On the fifth day of February, 1894, the defendant issued a policy of fire insurance, for the sum of three thousand five hundred dollars to the firm of Wetzel & Bovey, upon their stock of general merchandise, contained in a two-story brick building in the town of Lisbon, Linn county, Iowa. On the twenty-ninth day of May, 1894, the said building, with its contents, was totally destroyed by fire. After the fire, the firm of Wetzel & Bovey assigned their policy and the claim arising thereunder to the plaintiffs, in trust for the benefit of their creditors. This action was brought by the said assignees to recover the amount of the policy. In their petition, they claim that the value of the goods destroyed, was three thousand seven hundred and fifty dollars, and they allege that their assignors mailed proofs of loss, duly signed and sworn to, to the defendant company, on the eighteenth day of June, 1894. The defendant admitted the execution of the policy, and the destruction of the property by fire, but denied each and every other claim of the plaintiffs. The policy of insurance contained this

condition: "This entire policy shall be void  *  *  * if the interest of the insured be other than the unconditional and sole ownership  *  *  * or if any change other than by death of the insured take place in the interest, title, or possession of the subject of insurance (except change of occupation without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise." The defendant pleaded that the interest of Wetzel & Bovey, at the time of the fire, was not the sole and unconditional ownership of the property destroyed; that there was a change in the ownership of the property; and that Wetzel had no interest in it at the time of its destruction by fire; and that the goods were in the sole possession of Bovey at the time of the fire. Defendant further pleaded a condition, rendering the policy void, in cause of fraud, or false swearing by the insured, touching any matter relating to the insurance, or the subject thereof, whether before or after the loss; and it said, that this condition had been violated by the assured, because their proofs of loss contained a statement that they could not set forth a statement of the items or character of the goods destroyed, which statement was false and untrue. They also pleaded a statement made to their adjusting agent, with reference to the ownership of the goods; but they did not claim that this statement was untrue, as we understand the record. In reply, the plaintiffs denied the affirmative allegations of the answer, and further pleaded, that the statements made to the adjusting agent, which are referred to by the defendant, were obtained by fraud and misrepresentation practiced upon them by defendant's agent. On these issues the case went to trial to a jury, resulting in the verdict and judgment from which this appeal is taken.

I.   The defendant's first contention is that the court erred in overruling its demurrer to that part of the reply pleading that the statements made to the agent of the company were obtained through fraud. It is said that this is a plea in the nature of a confession and avoidance, and that there is no express admission that the statement was in fact made; in other words, that the pleading does not give color. Without setting out the reply in *hæc verba*, we think it is sufficient to say that there is an implied admission in it that the plaintiffs did sign the statements which are relied upon by the defendant, and that there is sufficient color to the pleading. It is not necessary that the confession be in express terms. If the reply, by reasonable implication, admits the facts sought to be avoided, this is sufficient. It is said, however, that the reply is a general denial, and that, for this reason, no confession will be implied. But this view overlooks the fact that inconsistent defenses may be pleaded.   True, they ought to be separate divisions or counts, but, if not so framed, a demurrer is not the proper pleading to reach them. See *Morgan v. Insurance Co.*, 37 Iowa, 359.

Defendant further contends that the reply is insufficient because it does not set forth the facts constituting the fraud relied upon by them to defeat the effect of the statements made by the agent.   This position is without merit, because the pleading does contain a general statement of the facts relied upon, and is sufficient.

It is also said that the reply contained simply a statement of the evidence, and was not defensive matter.   If this proposition be conceded, it follows that there was no prejudicial error in overruling the demurrer.   Aside from all this, it is clear that the statements referred to in the answer are

not issuable facts. They were simply admissions made by plaintiffs' assignors, which defendant was privileged to introduce in support of the issue tendered by it, and a reply thereto was wholly unnecessary.

II. Error is assigned upon the admission of the proofs of loss in evidence, because it is said that there is no evidence that they were served upon the defendant. The record shows that defendant was given notice to produce the papers, and that "the counsel for plaintiffs also offered in evidence a paper marked 'Exhibit B,' which was handed to counsel by counsel for defendant on notice to produce; it being the proof of loss served upon the defendant, and referred to in the plaintiffs' petition." This seems to meet the claim made by defendant's counsel. If it be conceded that this is not sufficient to establish service of the proofs of loss upon the defendant, yet neither the statute nor the policy requires formal proof of service. All that is required of the assured by either policy or statute, is that they give or render to the company proofs of loss. As they were found in the possession of the insurance company, and were produced by it upon the trial, the requirements of the contract, and of the law, were fully met. The defendant does not claim, either in its objections, or in argument, that it did not receive the paper in time.

Further complaint is made of the introduction of this paper because it is said some of the statements made therein are untrue. If this were so, it would be no reason for excluding the paper. Defendant would need it as a predicate for its defense.

III. Complaint is made of the court's refusal to submit seven certain special interrogatories submitted by defendant. To a better understanding of the

question presented, it is well to recite some of the facts disclosed by the record. It seems that, at the time the insurance was written, Wetzel & Bovey was a partnership composed of Henry Wetzel and J. G. Bovey. On or about May 6, 1894, the members of this firm had some talk about dissolving partnership; and, as neither was able to buy out the other, they concluded upon a division of the stock. Pursuant to this arrangement, they each selected a man to make a division of the goods, and these men so selected proceeded with their work. In order to accomplish it, they placed the goods in two piles, and those that were to go to Wetzel were removed from the building in which they were when insured, to one across the street. At the time of the fire, all the goods owned by the firm had been divided except to the amount of about one hundred dollars. It was claimed by the defendant that this constituted such a change, both in the title and possession of the goods, as that the policy was avoided; while, on the other hand, plaintiffs contended that it was expressly agreed between the members of the firm, that no dissolution should take place, and neither should release or relinquish his partnership interest in, and to, any part of the goods, until the partnership debts were paid, or until each had been indemnified by satisfactory security that the other would pay his share of the partnership indebtedness; and the plaintiffs contended, that this condition, precedent to a full dissolution and change of interest, had not been carried out when the fire occurred. There was no question, but that the division before alluded to was made, and that Bovey was in the manual possession of the goods destroyed by fire. The issue was upon the question as to whether the dissolution was complete, and as to whether Bovey was in possession for himself, or for the firm, of which he was, or had been, a member.

The interrogatories submitted by the defendant were as follows: "(2) Did Wetzel & Bovey, prior to the fire, divide the greater part of the stock described in the policy between them? Ans. ——. (3) What part of the stock, in value, of Wetzel & Bovey, described in the policy, was undivided at the time of the fire? Ans. ——. (4) Who was in possession of the stock remaining in the building described in the policy, at the time of the fire? Ans. ——.. (5) Who was in possession of the stock removed from the building described in the policy to a building across the street, at the time of the fire? Ans. ——. (6) Were the statements contained in defendant's Exhibit No. 1 true or false? Ans. ——. (7) Did Wetzel & Bovey, or either of them, have an invoice of the goods in controversy, or part of them, when the proof of loss was made and sworn to? Ans. ——."

• It is manifest that neither the second, third, fourth, nor fifth interrogatories, had they been submitted to the jury and answered, as the defendant claims they should have been, would have been conclusive. They simply called for evidentiary facts, most of which were undisputed. The court was not required to submit interrogatories for findings of fact not necessarily determinative of the case; nor to submit particular questions not ultimate in their nature, or which could not well be considered, or answered without danger of conclusion or misrepresentation. *Thomas v. Schee*, 80 Iowa, 237 (45 N. W. Rep. 539). *Winter v. Railroad Co.*, 80 Iowa, 443 (45 N. W. Rep. 737.) See, also, *Whalen v. Railroad Co.*, 75 Iowa, 563 (39 N. W. Rep. 894). The sixth interrogatory related to statements of plaintiffs made to an agent of the company, and not to the proofs of loss referred to in defendant's answer, and was manifestly improper, as it related simply to an item of evidence which

the defendant used for the purpose of proving a dissolution of the partnership. But, aside from all this, the defendant, at all times, insisted that the statements contained in what was known as "Exhibit 1" were true. It did not claim that any false swearing was done in this. It introduced the paper for the purpose of establishing the truth of one of its defenses, and did not rely upon the falsity of the statements therein contained. Moreover, the false swearing which will avoid a policy must be done willfully and knowingly, and with intent to defraud the company. Now, the company does not claim that the statements made in Exhibit 1 were false. On the contrary, it insists that they were true. But, if they were false, it is clear that they were not made with intent to defraud; for, if true, they would have shown that the firm had no interest in the property at the time it was destroyed. The seventh interrogatory called for an answer which was not determinative of the case. In their proofs of loss, the insured stated that they could not set out specifically the items and character of the goods destroyed. It was claimed by defendant that this was untrue, because they had recently taken an inventory of the goods which they had in their possession. Now, in the first place, there was nothing in the policy, nor in the law, requiring them to make an itemized list of the goods destroyed; and, secondly, if there had been such a requirement, a finding that they had an invoice of the goods would by no means be conclusive on the question of fraud or false swearing; for it is well settled that, in order to avail itself of this defense, the insurer must show that the assured knowingly and intentionally swore falsely. There must be a willful intent to defraud, and not a mere mistake or oversight. The question of fraud or false swearing was fairly submitted to the jury by proper instructions, and they manifestly found that

the plaintiff's assigns did not make any false statements for the purpose of deceiving the defendant. An affirmative answer to the seventh interrogatory would not have been in conflict with the general verdict.   See *Cormac v. Bronze Co.*, 77 Iowa, 32 (41 N. W. Rep. 480); *Hawley v. Railroad Co.*, 71 Iowa, 720 (29 N. W. Rep. 787); *Dreher v. Railroad Co.*, 59 Iowa, 601 (13 N. W. Rep. 754); *Scagel v. Railroad Co.*, 83 Iowa, 380 (49 N. W. Rep. 990). Again, defendant was not prejudiced by the court's refusal to submit this last interrogatory.   The jury, by their general verdict, found that the statements in the proofs of loss, even if untrue, were not made for the purpose of deceiving the defendant; and an affirmative answer to the seventh interrogatory would not have been controlling.

IV.   Error is assigned on the admission and rejection of evidence.   The questions to which objections were sustained, in most instances called for a mere repetition of the testimony of the witness, and, for that reason, the court correctly ruled. Other questions asked by defendant's counsel were not proper cross-examination, and were properly rejected. Some of the questions propounded to the witness, Morrison, by plaintiff's counsel, were not strictly cross-examination; yet, in view of the issue of fraud tendered by the reply, we are led to believe that the court did not abuse its discretion in such matters, and that, in any event, the answers were not prejudicial.

V.   Certain of the instructions are complained of. We have examined these complaints, and find that they relate more to the brevity of the charge than to its correctness.   It is said that it is a question of law for the court whether the partnership was dissolved or not.   We do not so think.   It was a mixed question of law and fact, upon which the jury was properly instructed.   It is insisted, however,

that the court ignored the issue of change of possession. True it is that it did not specifically refer to this issue; but, under the facts of the case, the real question was one of change of ownership, for if there was no dissolution of the firm, then the possession of one member was the possession of the co-partnership. Each member of the firm, until its dissolution, was an agent for the firm, and his possession was the possession of the principal. We see no error in the instructions given.

VI. The defendant asked twenty-four instructions, each of which was refused by the court. We cannot set them out without unduly extending this opinion. It is sufficient to say that, in so far as they embodied correct rules of law, they were given, in substance, by the court on its own motion. What we have said in the course of this opinion, sufficiently answers most of the propositions argued by counsel.

But one of the instructions asked calls for specific mention. It announced the rule that the division of the stock, and the removal of substantially one-half thereof to another building, if found by the jury to be an increase of risk, would avoid the policy. The error of this instruction becomes apparent when we state that there was no evidence adduced to show that the risk would be increased thereby. It cannot be said, as a matter of law, that such a division and removal of the goods would of themselves increase the rate, or the hazard. 1 Wood, Ins. sections 241–260; *Martin v. Insurance Co.*, 85 Iowa, 643 (52 N. W. Rep. 534).

Other questions are discussed by counsel, which we do not notice, for the reason that we have sufficiently indicated our views with reference thereto in what has already been said. The verdict has support in the evidence, and, as we find no prejudicial error, the judgment is AFFIRMED.