## *Wytheville.*

VIRGINIA FIRE AND MARINE INSURANCE COMPANY *v.* HOGUE.

June 14, 1906.

1. FIRE INSURANCE—*Fraud as a Defense—Burden of Proof—Degree of Proof Required.*—In an action on a policy of insurance against fire, when the defendant relies on fraud, false swearing, or other unlawful act, to relieve him from liability on his contract, the burden of proof is on the defendant, and he must establish his defense by clear and· satisfactory proof—not proof beyond a reasonable doubt, nor a preponderance in the ordinary sense, but a preponderance of evidence sufficient to overcome the presumption of innocence of moral turpitude or crime. The preponderance rule continues to operate, but more evidence is required to constitute a preponderance than where this presumption does not exist.

2. FIRE INSURANCE—*Fraud in Proofs of Loss—Innocent Misstatements—Moral Turpitude.*—Where property of a wife, which is insured, is managed by her husband as her agent, false statements by him after loss as to quantity and value of the property, which are adopted by her in the proofs of loss and in an affidavit in connection therewith, without knowledge of their falsity, will not render the policy void under a provision therein avoiding it for false swearing or fraud in the proof of loss or in connection therewith. Moral turpitude is an essential element of this species of fraud. This is especially true where the defendant knew that the statements of the wife were not made as of her own knowledge, but upon information derived from her husband, provided she had reason to believe and did believe the statements to be true.

3. FIRE INSURANCE—*Legal Fraud in Procurement—Moral Fraud After Loss.*—Legal fraud in making a contract of insurance may serve to defeat or cancel the policy, but nothing occurring after loss but moral fraud can render the policy void.

4. NEW TRIAL—*Verdict Contrary to Evidence.*—The credibility of witnesses and the weight to be given to their testimony are peculiarly questions for the jury; and, where the evidence is conflicting, the

mere fact that the court doubts the correctness of the verdict, or if on the jury would have rendered a different verdict, is not sufficient to justify the court in setting aside the verdict found by the jury. To warrant a new trial where the evidence is conflicting the evidence must be insufficient to support the finding of the jury.

Error to a judgment of the Circuit Court of Prince George county in an action of assumpsit. Judgment for the plaintiff Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hamilton & Mann,* for the plaintiff in error.

*Richard H. Mann,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Helen M. Hogue, wife of R. F. Hogue, brought this action against the Virginia Fire and Marine Insurance Company upon two policies of insurance, insuring the plaintiff against loss by fire on "400 bags of Spanish peanuts (1,700 bushels) contained in the frame, shingle-roof storage house, situate about 200 yards east of dwelling occupied by assured, about two miles from Disputanta station, in Templeton District, Prince George county, Virginia. Three-quarter value and lightning clauses attached." The one policy for $1,075 is dated July 13, 1904; the other for $275 is dated March 31, 1904, and each running one year from date.

The declaration alleges that a fire, which occurred on the 29th day of October, 1904, entirely destroyed the storage house mentioned in the policies, together with 400 bags (1,700 bush--

els) of Spanish peanuts therein stored, of the value of $1,530, and that by reason of this loss the plaintiff was entitled to recover of the defendant company three-fourths of the loss—viz: the sum of $1,147.50, with interest thereon from January 20, 1905.

The defendant pleaded the general issue and tendered four special pleas, upon which the plaintiff took issue, the special pleas setting forth specifically instances of fraud and false swearing on the part of the plaintiff in furnishing proofs of loss, including a deposition given by her as to her loss, and claiming that by reason of the alleged fraud and false swearing the defendant was, under a certain clause of its policies, relieved from the payment of anything whatsoever to the plaintiff. The material matters put in issue by the special pleas were as to the size of the house burned and the amount and value of the peanuts alleged to have been stored therein at the time of the fire, the defendant claiming that in point of fact the room in question was too small to accommodate 400 bags of peanuts, each containing four bushels and a peck, and that, at any rate, at the time of the fire the amount of peanuts in the room burned fell far short of 400 bags.

Upon a trial of the cause the jury found a verdict in favor of the plaintiff for the sum of $1,147.50, with interest, as claimed in her declaration, and the court, overruling the defendant's motion to set aside the verdict and grant a new trial for misdirection of the jury by the instructions given and refused, and because the verdict is contrary to the weight of the evidence, entered judgment in accordance with the verdict; and to that judgment a writ of error was allowed by a judge of this court.

At the trial the parties each asked the court for certain instructions to the jury, all of which were refused, and in lieu thereof the court gave its own instructions, ten in number.

In the policies sued on there is a provision to the effect that the entire policy should become void "if any false swearing or fraud, or attempt at fraud, is made by the assured, before or after loss or damage, in support of his claim for loss, or in the proofs of loss hereinafter mentioned, or otherwise in connection with this policy, or any claim under it." There was evidence tending to prove that the defendant in error had violated this provision of her policies, and therefore had forfeited all right to recover thereon by false swearing in furnishing proofs of her loss and in a deposition given by her as to the loss; and plaintiff in error, by its instructions Nos. 4 and 5, sought to have the jury told that the degree of proof required to establish the fraud or false swearing alleged was merely a "preponderance of evidence"; but the court refused these instructions and gave in lieu thereof its own instructions Nos. 8 and 9, which, in effect, told the jury that the burden of proving the fraud and false swearing set up in the special pleas was upon the party alleging the fraud and false swearing, and that the fraud must be established by "clear and satisfactory proof."

Instructions Nos. 4 and 5 refused, and Nos. 8 and 9 given, are as follows:

### No. 4.

"The court instructs the jury that in considering whether Mrs. Hogue or her husband, in establishing Mrs. Hogue's loss by the fire of October 29, 1904, swore falsely or untruly, the falsity or untruth of their statements need not be established with that nicety of precision and to the exclusion of every reasonable doubt of their innocence as would be necessary were they, or either of them, on trial and being prosecuted criminally for perjury, but has to be established like any other fact in. issue in this case by a preponderance of testimony."

## No. 5.

"The court instructs the jury that, this being a civil suit, they must decide every material issue according to the preponderance of the evidence, whether such evidence be written, oral or circumstantial; and, in determining the weight to be given to the oral evidence, they are not to decide either way *solely* by the *number* of witnesses testifying to any fact or facts, but they are the exclusive judges of the credibility of each and every witness, and of the weight to be given to the testimony of such witness, taking into consideration all the surrounding circumstances on the trial, including the interest of such witness in the result of the trial."

## No. 8.

"But the burden of proving fraud or false swearing, by which the defendant seeks to avoid all liability for the alleged loss, is upon the defendant."

## No. 9.

"The law never presumes fraud, but the presumption is always in favor of fair dealing. He who alleges fraud must establish it, and by clear and satisfactory proof. It is not necessary that fraud shall be proved by direct and positive proof, but it may be shown by circumstances. If the facts and circumstances shown in evidence are such as will lead a reasonable man to the conclusion that fraud exists, this is all the proof thereof that the law requires."

The contention of plaintiff in error is that the well settled rule as to the degree of proof required to establish fraud does

not apply to a case where an insurer sets up the defense to an action on its policy that assured has forfeited all right to recover thereon by fraud or false swearing, but that the fraud or false swearing alleged as a defense to the action should stand, as to the question of proof, on a different footing from fraud alleged in an action brought for the purpose of establishing fraud, and the degree of proof should, if anything, be less.

Recognizing that the strong presumption of both law and fact must always be in favor of freedom from fraud or unfair dealing, the courts have spoken in no mistakable terms as to the degree of proof required to establish fraud or unfair dealing, though the precise question here presented has not been passed upon by this court, so far as we have been able to find.

In *Hord* v. *Colbert,* 28 Gratt. 49, the opinion by Staples, J., says: "The law does not presume fraud. It is not to be assumed on doubtful evidence. . . . The party alleging the fraud must clearly and distinctly prove it. If the fraud is not strictly and clearly proved as it is alleged . . . no relief can be had.

The same rule, as to the degree of proof required to establish fraud is stated and sanctioned in apt words' by Harrison, J., in *Va.-Carolina Chem. Co.* v. *Carpenter,* 99 Va. 292, 38 S. E. 143, by Keith, P., in *Wheby* v. *Moir,* 102 Va. 878, 47 S. E. 1005, and in a great many more cases which might be cited; but, as we have said, none of them deals with the precise question presented in this case.

In 14 Am. & Eng. Ency. L., p. 200, citing a number of authorities, it is said: "According to the overwhelming weight of authority, fraud need not, like the guilt of the accused in a criminal prosecution, be established beyond a reasonable doubt. A preponderance of evidence, as in any civil case, is sufficient, provided the proof is clear and strong enough to preponderate over the general and reasonable presumption that men are hon-

est and do not ordinarily commit frauds, and reasonably to sat-isfy the understanding and conscience of the judge or jury. If it does this, it is sufficient both at law and in equity." Again on pp. 203-4 it is said: "The fact that it appears that a party charged with fraud had a motive for committing it is not alone sufficient to authorize a finding against him."

The presumption of innocence and fair dealing attends a party charged with an unlawful act or with moral turpitude, whether made in one form of pleading or another, and if the quality of the proof required to overcome this presumption of innocence and fair dealing be no higher or greater than when the issue does not involve the charge of an unlawful act or the guilt of moral taint, the expressions used by this and all other courts to the effect that fraud must not only be alleged but "clearly and satisfactorily proved" would be meaningless, and we would have the same rule as to the quality of the proof necessary to establish the charge of fraud and false swearing that governs in all civil cases where there is no such issue made. It is true that the rule as to the degree of proof required to con-vict where the guilt or innocence of a party charged with a criminal offense is the issue, and where the jury is not author-ized to find a verdict of conviction unless the guilt of the ac-cused is made to appear "beyond a reasonable doubt," does not apply in a civil case.

So in the case of *Blackburn* v. *St. P. F. & M. Ins. Co.* (N. C.) 21, S. E. 922, relied on for plaintiff in error, it was held that instructions which told the jury that the defendant must show the conspiracy between the plaintiffs and another to burn and also the burning of the insured building "beyond a reasonable doubt"; that they must find "that there was no rea-sonable hypothesis consistent with the innocence of the plain-tiff"; and that it was not sufficient "that the facts and circum-stances relied upon to establish the truth of the charge are con-

sistent with it, they must be inconsistent with his innocence," were erroneous. In that case it is rightly stated that both reason and the weight of authority sustain the proposition that "in an action on a policy of insurance against fire, when the defendant pleads that the property was fraudulently burned by the plaintiff, the defendant is not bound to prove such defense beyond a reasonable doubt."

A number of other authorities are cited for plaintiff in error, among them *Bullard* v. *His Creditors,* 56 Cal. 600; 1 Greenleaf on Ev. 161; 4 Field's L. Briefs; Clements on F. Ins. &c., 286, to the effect that a number of instructions taken as a whole which "conveyed to the mind of the jury the idea that they were not authorized to find fraud by a mere preponderance of evidence," were erroneous; that the plea of arson by the insurer to an action on a policy of fire insurance has to be established only by a preponderance of evidence; and that "wilful burning may be established by circumstantial evidence and by a preponderance of evidence, it is not necessary to prove the acts beyond a reasonable doubt, as required in a criminal prosecution," but we find nothing in these authorities that is opposed to the rule that where fraud, false swearing, or other unlawful act is charged as a ground for rescinding a contract, or is relied on to relieve a party sued on a contract from liability thereon, the charge, by whatever pleading made, must be established by "clear and satisfactory" proof.

In *Va.-Carolina Chem. Co.* v. *Carpenter, supra,* the plaintiff charged the defendant with bad faith in refusing to accept certain rock which it had agreed to accept if, upon test, it proved satisfactory, and this court said: "To act in bad faith is to act fraudulently, and as every one has attached to his actions the presumption of innocence, it is an established principle that a charge of fraud or bad faith must be clearly and distinctly proven."

Accordingly it was held in *Ware* v. *B. & L. Asso.,* 95 Va. 680, 29 S. E. 744, 64 Am. St. Rep. 826, that the defense of usury involved the charge of a violation of law visited by penalties, and the proof of the usury must be clear and satisfactory.

The term "clear and satisfactory proof," or "clear and convincing proof," used in an instruction in a civil case has been in but a few instances held to mean "proof beyond all reasonable doubt," and does not, as it appears to us, bear that interpretation.

In a case, as in this, where the defense made to the action involves the charge of an unlawful act, fraud, or even bad faith, a preponderance of the evidence, as in any other civil case, is sufficient to sustain the charge, provided the proof is clear and strong enough to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud, or act in bad faith—i. e., the preponderance rule continues to operate in such cases, the adverse presumption in favor of honesty and fair dealing merely requiring more evidence to constitute a preponderance than where this presumption does not exist. As well expressed in the court's instruction No. 9 in this case: "It is not necessary that fraud shall be proved by direct and positive proof, but it may be shown by circumstances. If the facts and circumstances shown in evidence are such as will lead a reasonable man to the conclusion that fraud exists, this is all the proof thereof the law requires." 17 Cyc. 761-5; *Southard* v. *Curfew,* 134 N. Y. 148, 31 N. E. 330, 16 L. R. A. 561, 30 Am. St. Rep. 642.

We are of opinion, therefore, that "clear and satisfactory proof," in cases involving fraud or false swearing, may be defined to be a preponderance of evidence sufficient to overcome the presumption of innocence of moral turpitude or crime, and that the jury in this case could not have been misled to the prejudice of the plaintiff in error by the court's instructions

Nos. 8 and 9 complained of. No. 8 correctly propounded the law as to the burden of proof where there is a charge of fraud or false swearing, by which a defendant seeks to avoid all liability under the contract sued on; and No. 9 in plain and unambiguous language instructed the jury as to the character and degree of proof required to establish the charge of fraud and false swearing, and made clear to them what was meant by the term "clear and satisfactory proof," as applied to this case. It follows that we are also of opinion that there was no error in refusing plaintiff in error's instructions Nos. 4 and 5.

It developed in the evidence that the defendant in error was the owner of a farm in Prince George county, on which she resided with her husband and several children; that her husband, R. F. Hogue, attended to all of her business for her, conducted and managed the farm, made and stored the crops, and that she, personally, attended to the indoor work, housekeeping, etc. She was, in the very nature of things, dependent upon her husband for her information and knowledge with respect to the conduct of the farm, and under the circumstances it could not be expected of her to have counted every bag of peanuts raised and stored for her by her husband, as he had entire charge and control of her business in that respect. This was the condition of affairs at the time the fire occurred destroying the peanuts alleged to have been lost; and in giving the two proofs of loss sworn to on November 14 and November 23, 1904, defendant in error stated therein that she had 400 bags, or about 1,700 bushels of Spanish peanuts, of about the value of 90 cents per bushel, making a total value of $1,530, stored in the storehouse on her farm, and that these peanuts were destroyed by the fire of October 29th, without stating whether she knew these facts of her own personal knowledge, or from information derived from others. These proofs were received by plaintiff in error on November 18th and 23d, respectively, and it made

no objection to the sufficiency of either proof of loss as far as the evidence discloses.   On December 8, 1904, a special agent of plaintiff in error, accompanied by a contractor also employed by it, both of whom had previously visited defendant in error in connection with her alleged loss, called at her residence in company with a justice of the peace for the purpose of examining her under oath touching her loss.   The husband of defendant in error stated at the beginning of this examination that there were some questions asked that probably defendant in error could not answer, and wanted to know if he could answer for her, which was agreed to by the agent of the company, provided she accepted the statements of her husband as if uttering them herself; and defendant in error replying that she would adopt her husband's answers as her own, the deposition was proceeded with.   It thus appears that plaintiff in error had then and there, if not before notice that the answers given by defendant in error were not based upon her own personal knowledge, but to a large extent at least upon information derived from others.

The refusal of the court to give plaintiff in error's first and second instructions is assigned as error.   The purpose of these instructions was to tell the jury that defendant in error was responsible for the answers given by her husband to the interrogatories propounded to her on the 8th day of December, in support of her claim of loss from the fire which destroyed her peanuts, and that by adopting his answers as her own and swearing to them, any statement that was untrue and false as to her husband would be equally false and untrue as to herself, whereby she could not recover in this action by reason of the provision in the policies which we have quoted above, which provides that the entire policy shall become void "if any false swearing or fraud, or attempt at fraud, is made by the assured

before or after loss or damage in support of his claim for loss, or in- the proofs of loss hereinafter mentioned," etc.

The vice in these instructions is that they fail to draw the distinction between a mere untrue statement and a fraudulent or false statement.

"It is a general rule that a misstatement in the proofs of loss, to forfeit the policy, must be not only false, but wilfully false. A mere innocent mistake will not amount to fraud or false swearing within the provisions of the policy." 4 Cooley's Briefs on Ins., 3415, where a number of cases are cited in support of the text just quoted.

It is not attempted in the evidence to prove that defendant in error wilfully and knowingly made false statements in her proofs of loss, nor that she knew that her husband made, in answer to interrogatories, statements that were false. Whether the statements made by the husband were false was a question for the jury, and it would indeed be a hard case if defendant in error were held to have forfeited her right to recover on the policies she held covering the loss for which she is suing merely because her husband made statements as to her loss which proved to be untrue, although in accepting these statements as her own she believed them to be true.

"Where the property is business property under the charge and control of the husband, as agent of his wife, a fraudulent statement in the proofs by the husband, afterwards adopted by the wife without knowledge of the facts and without investigation, will not amount to fraud on her part." *Boston Marine Ins. Co.* v. *Scales,* 101 Tenn. 628, 49 S. W. 743; 4 Cooley's Briefs on Ins. 3417.

In the case just cited it appeared that the husbands of the two ladies whose property had been burned made fraudulent representations and statements in the proofs of loss, and the opinion says: "It is said that the court erred in charging the

jury that if there were any fraudulent and wrongful items embraced in the proofs of loss it must be shown that they were included with the knowledge and by the consent of the ladies insured, and that the fraudulent acts and intent of R. W. Waller, as their agent, could not defeat their right of recovery, unless they knew of the fraud, or ratified it after it came to their knowledge; and that the court should have charged the jury that if Mrs. Scales and Mrs. Waller adopted any false statements made by their agents, without investigating the facts, they thereby became guilty of fraud themselves, and the jury should find against them; and that if they made representation as to knowing the facts when they had no knowledge, and the representations proved to be untrue, that would be fraud within the provisions of the policy, and would defeat any recovery. These assignments present the merit of the controversy. . . . As touching this general question it appears that the preliminary proofs were made out by the husbands, Scales and Waller; they were accepted and adopted without investigation by the insured, and were sworn to without actual knowledge on their part, and they were thus rendered to the company." *Held*: "That the instruction given by the court below, as hereinbefore stated, expounded the law correctly, and that the charge requested by the defendant company was rightly refused."    Says the opinion further: "Here the business was in the hands of the husbands, and they were familiar with it, and the wives were not.    The wives could only get the information through their husbands, who gave them assurances of good faith by themselves swearing to the statements."

In this case the agent of the plaintiff in error was informed that the defendant in error was dependent upon her husband for information as to the extent of her loss, and was led to believe that the statements made by her husband and accepted by her would be received as though made upon her own knowl-

edge; and she was not notified at any time before the trial of this case that plaintiff in error would attempt to hold her responsible for the untruth of the statements made by her husband.

In *Metzger* v. *Manchester Fire Ins. Co.,* 102 Mich. 334, 63 N. W. 650, a case very similar to the case at bar, and which was cited as authority in *Boston Marine Ins. Co.* v. *Scales, supra,* the policy of insurance contained the provision that it should be void in case of any fraud or false swearing by the insured touching any matter relating to the loss, etc.   The fraud of the husband was gross and glaring, but the court held that the wife could not be affected by it, inasmuch as she was innocent of the fraud.   The opinion in that case, referring to the provision in the policy which we have mentioned, says: "This defense is not that the company was defrauded in the making of the contract.   In such a case the fraud of the agent could be asserted as a defense against the principal, whether the policy so provided in express terms or not.   But the contract was valid, and, for the purpose of determining this question, we must assume that plaintiff has suffered an honest loss, for which she had a legitimate claim.   An effort is made to defeat this by showing an attempt by an agent to deceive the defendant into paying a sum greater than the loss.   Forfeitures and penalties are not favored in the law, and the language should not be unnecessarily extended by construction.   The provision for a forfeiture of rights under the policy is doubtless a wise one, to prevent deceit on the part of insured persons; but it does not seem to us necessary, where the insured acts in good faith, and is not a party to the deceit."

The case of *Crump* v. *Mining Co.,* 7 Gratt. 352, 56 Am. Dec. 116, cited by plaintiff in error in support of its proposition contained in instructions Nos. 1 and 2, refused, has no sort of application to this case.   That was a suit brought to recover a

stock subscription, and the defense of fraud in the procurement of the subscription was made; and it was held that the principal could not recover where the agent had made fraudulent though unauthorized representations, and the subscriber had been misled to his injury. This principle cannot be extended to a case in which it is sought to enforce a forfeiture because of false swearing as to proofs of loss under a policy of insurance; and no case can be found in which a forfeiture of an insurance policy for fraud and false swearing as to proof of loss was ever effected, unless the defendant swore recklessly and made statements under oath that were knowingly and wilfully false. Moral turpitude is an essential element of this species of fraud, and reckless swearing is a moral wrong. Cooley's Briefs on Ins., *supra,* and authorities there cited.

In lieu of instructions Nos. 1 and 2, asked by plaintiff in error, the court gave its own instruction No. 4, which is as follows:

"If the sworn statements and representations of the plaintiff as to the quantity of peanuts destroyed by the fire, were made by her on information, and not of her own knowledge, and the defendant company, or its agents acting for it in that respect, understood that they were made merely on information, there is no fraud, if the plaintiff had reason to believe and did believe the information upon which she acted to be true, though it prove to be untrue, and the jury should find for her to the extent of the loss sustained by her."

It seems that the only objection made to this instruction is that the court assumes that there was evidence before the jury to the effect that the plaintiff in error, or its agents acting for it, understood that the proofs of loss furnished and deposition given by defendant in error were merely made on information. This objection to the instruction proceeds upon a total misapprehension as to what the evidence in the case is. As we have seen,.

the agents of plaintiff in error well understood that defendant in error, from the very nature of the case, was dependent upon information derived from others in making up proofs of loss and in answering interrogatories propounded to her in the deposition she gave on December 8, 1904. Therefore the instruction No. 4 was not prejudicial to plaintiff in error, but more favorable to it than otherwise, because it makes no difference whether or not the insurer or its agents understood that such statements as were made were in fact made on information derived from others by the insured, it being sufficient if in fact they were so made without being recklessly made or being wilfully false. *Boston Marine Ins. Co.* v. *Scales, supra; Metzger* v. *Manchester Fire Ins. Co., supra.*

The next assignment of error touching the instructions given by the court is that "the court erred to the prejudice of the company in its failure to properly instruct the jury as to the effect of written statements made by the insured of her own knowledge, when the evidence conclusively shows she had no such knowledge."

Conceding that the falsity of the statements with respect to the personal knowledge of defendant in error was put in issue by the pleadings in the case, we do not find that the court was requested to instruct the jury as to the effect of the written statements made by her as of her own knowledge, unless it be instructions Nos. 1 and 2, refused, which, as we have said, were properly refused; and it would unduly extend this opinion to discuss those instructions again.

"A misrepresentation made without a corrupt motive or dishonest purpose is called legal fraud. If there be present a corrupt motive or dishonest purpose in making a representation there is moral fraud." Kerr on Fraud and Mistake, 55.

As we have remarked, there is no case to be found, as far as we are advised, holding that circumstances that would other-

wise be legal fraud occurring after loss render a policy of insurance void. Legal fraud in making the contract of insurance may serve to defeat or cancel the policy, but nothing occurring after the loss but moral fraud can render the policy void. See the authorities cited above and also *Runkle* v. *Ins. Co.,* 99 Ia. 414, 68 N. W. 712.

We are cited to a number of cases which hold that the right to recover under a policy of insurance was defeated by false representations made by the insured concerning the loss, but they were cases in which the representations of the insured were admittedly false, and therefore the law as laid down in those cases can have no application here. In one of these cases, *Mullen* v. *Ins. Co.,* 58 Vt. 113, 4 Atl. 817, the decision was put on the ground that the insured swore recklessly to an inventory prepared by his wife, an inspection of which would have shown many false entries intended to work a fraud on the insurer. The opinion in that case says: "If he had looked it over and wished to be honest, he would have discovered many false statements. . . . On the contrary, he recklessly indorsed it without examination, and by so doing made it his own fraud within the meaning of the policy." This case was reviewed in the well considered case of *Boston Marine Ins. Co.* v. *Scales, supra,* where the court said of it: "This is a strong case, and goes to the very verge of the law, if it is not, indeed, contrary to the current of authority." It was a case, as the court said, either of "gross fraud or reckless negligence on the part of the husband," and is therefore very unlike the case at bar.

This brings us to the consideration of the last assignment of error, which is to the refusal of the court to set aside the verdict of the jury on the ground that it is contrary to the weight of the evidence.

There is nothing better settled in this jurisdiction than that the credibility of witnesses and the weight to be given to their

evidence in a particular case are properly to be determined by the jury; and where the evidence, consisting of circumstances. and presumptions, is conflicting the mere fact that the court doubts the correctness of the verdict, or if on the jury would have rendered a different verdict, will not be sufficient to justify setting aside the verdict found by the jury. *Kimball & Fink* v. *Friend,* 95 Va. 126, 27 S. E. 901. · To warrant a new trial. in cases where the evidence is conflicting, the evidence must be insufficient to warrant the finding of the jury.

In this case plaintiff in error sought to maintain three propositions—first, that the room in which the peanuts burned were stored was not large enough to contain four hundred bags of peanuts of the size alleged to have been burned; second, that the character of the remains of the fire did not indicate that as many as four hundred bags of peanuts had been consumed; and, third, that in fact there were not four hundred bags of peanuts in the room at the time of the fire. A large number of witnesses were examined, and it would be needless for us . to undertake to set out in detail the statements made bearing upon the seevral propositions stated. To say the least of the evidence, it was conflicting upon every point, and therefore, as it seems to us, the case comes clearly within that class referred to in the rule governing new trials, to which we have just adverted, and is peculiarly a case in which the court would not be justified in interfering with the verdict of the jury.

Upon the whole case we are of opinion that the judgment. should be affirmed.

*Affirmed.*