# Staunton

## S. E. Rudlin, Etc. v. Lawrence Parker.

September 3, 1947.

Record No. 3217.

Present, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Emanuel Emroch*, for the plaintiffs in error

*Samuel H. Gellman* and *Henry J. Schrieberg*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

In the trial court Lawrence Parker instituted an action at law against S. E. Rudlin, individually and trading as Adams Optical Company, for damages for a breach of a written contract of employment. The parties will be referred to as plaintiff and defendant, respectively.

The defense in the trial court was that the defendant was justified in discharging the plaintiff because of misconduct on his part during the course of his employment. The misconduct relied upon as a defense consisted of lewd, indecent, indiscreet proposals, approaches and remarks to a female patient and customer. It was claimed that this alleged misconduct on the part of the plaintiff resulted in loss to the defendant of business and prestige. The case was tried before a jury and this issue was submitted to it. A verdict in favor of the plaintiff, awarding him damages of $2,601.70 was returned, and was sustained by the trial court.

The defendant is an optometrist and his offices were located in the Grace American building in Richmond. He also owned and operated two optical stores in Richmond under the name of Adams Optical Company. His representatives in the stores sent to him patients and customers for eye examinations. One of the stores was located at 608 East Grace street, approximately two blocks from the office of the defendant. The other store was located at 216 East Grace street. In this latter location was the laboratory and work shop of the Adams Optical Company. Both stores were operated under that trade name. Customers would go into the stores seeking eye glasses and would be referred to the defendant Rudlin. He would examine their eyes, write a prescription for glasses and return them to the store at 216 East Grace street where the prescription would be filled.

The plaintiff, who was then living in the city of New York, on April 23, 1945, entered into a contract in writing with the defendant whereby the plaintiff was employed by

the optical company for a period of one year commencing on May 1, 1945. The contract is as follows:

"This contract of employment made this 23rd day of April, 1945, by and be- Adams Optical Company, of Richmond, Virginia, hereinafter referred to as the Company, and Lawrence Parker, of Bronx, New York, hereinafter referred to as Employee.

## "WITNESSETH"

"That the said party of the second part, hereinafter referred to as Employee, for the consideration hereinafter referred to and mentioned, does covenant and agree to and with the said party of the first part, hereinafter referred to as the Company, by these presents, that he, the said Employee, shall and will, commencing from May 1, 1945, diligently and faithfully serve the said Company as manager, optical dispenser, and shop man of the said Company.

"And the said Employee does hereby further covenant and agree to and with the said Company, that he will not at any time during or after his present employment, engage or interest himself in any way, in the same or similar business in any city or town within the State of Virginia, wherein the said Company owns, operates, or has an interest in a similar or the same business.

"It is further covenanted and agreed by the parties hereto, that a prior notice of 90 days in writing is necessary to terminate this contract of employment which shall remain in force for a period of 1 year. And if either party hereto fails to give a prior notice of 90 days in writing of his intention to terminate this contract at the end of the one year period, then this contract shall remain in force from year to year until the required notice is given by either party.

"IN CONSIDERATION of all which said services to be observed, done and performed by the said Employee, as aforesaid, the said Company does hereby covenant and promise that it will among other considerations, pay to the said employee the sum of $75.00 per week plus 5% of all

cash receipts of the Company over and above $75.00 per week.

"Witness the following signatures and seals.

"(Signed) Lawrence Parker    (SEAL)
"(Signed) S. E. Rudlin        (SEAL)
"Adams Optical Company."

Under the contract the compensation to be paid the plaintiff was definite and certain. He was to receive the sum of $75.00 per week, plus five per cent of all the cash receipts of *the company* over and above $75.00 per week. This contract was drawn by the attorney for the defendant. On May 1, 1945, the plaintiff began his employment under the contract. He was placed at 216 East Grace street where the laboratory and work shop of the optical company was located. He was a shop man for both stores of the optical company.

On November 26, 1945, the plaintiff was summarily dismissed from his employment by the defendant upon the alleged ground that he had made indecent advances to a female customer. On November 27, the next day, the attorney for the defendant sent to the plaintiff a letter accompanied by a statement and a check of the optical company for $162.96, purporting to cover the commissions due the plaintiff until the date of his dismissal. The plaintiff refused to accept the check because he contended that it did not fully cover his compensation. He returned the check to the attorney and wrote a letter requesting a statement of all cash receipts of the optical company and demanded that a remittance of his compensation be made each month in accordance with the contract. These requests were denied and the present action was begun.

The alleged misconduct of the plaintiff was sought to be shown by the testimony of a female customer who testified that she went into the store at 216 East Grace street for the purpose of getting glasses; that the plaintiff asked her to sit down at a table and draw closer to it, which she did; that he requested her to open her blouse which she did; that the

plaintiff put his hands on the inside of her blouse and remarked, "They are hard to get out, aren't they?"; that upon her repeated protest the plaintiff said, "You know you have to have a thorough examination." She said the plaintiff told her, "When you come back wear an open gown and come around six o'clock p. m." The store was ordinarily closed at 5:30 p. m. This witness testified that the plaintiff asked her when she last had intercourse. The witness then testified that she had made complaint to plaintiff's superior and the result was that the defendant was notified of this alleged misconduct. The plaintiff's dismissal followed.

The plaintiff testified as a witness in his own behalf. He and the female customer were the only witnesses on this point. He denied absolutely that he had been guilty of any such misconduct as detailed by the woman customer. The issue for the jury to determine was one of the veracity of the two witnesses, and they accepted the statement of the plaintiff which was in their province.

There are numerous assignments of error, but the main one and the one which was emphasized before us in oral argument challenged instruction No. 4, given at the request of the plaintiff. This instruction is as follows:

"The court instructs the jury that the burden is on the plaintiff to prove his case by a preponderance of the evidence. The court instructs the jury that the plaintiff having produced his contract of employment and having shown his discharge by the defendant, *it then became incumbent upon the defendant to produce satisfactory evidence that the plaintiff's discharge was justified in fact.* The court further instructs the jury that even though the defendant believed he had reasonable cause to discharge the plaintiff yet if in fact such cause did not exist and was not shown to be true then such discharge was unjustified." (Italics supplied.)

The objection to this instruction is directed to the language italicized.

The court properly placed the burden upon the plaintiff to prove his case by the preponderance of the evidence. It

then placed the burden on the defendant to sustain his defense by satisfactory evidence. It then told the jury that if in fact the defendant did not have reasonable cause to dismiss the plaintiff then his discharge was not justified.

The misconduct charged by the defendant against the plaintiff was of such character as to import a crime. If he actually placed his hands upon the body of the female customer against her will as detailed by her then he was at least guilty of an assault. Certainly to sustain such a charge the duty was upon the defendant to do so by clear and satisfactory evidence. Courts always indulge a presumption that one is innocent of a crime charged against him whether it be upon a criminal prosecution or in a civil action in which the defense is based upon a crime. For instance in *Ware* v. *Bankers' Loan, etc., Co.*, 95 Va. 680, at page 684, 29 S. E. 744, 64 Am. St. Rep. 826, where the defense was usury, the court held, "The rule of evidence therefore remains unchanged and the proof of usury must still be clear and satisfactory." In the opinion in that case it is stated that usury is a violation of law visited by penalities. The presumption of innocence was applied there in a civil action. To sustain a defense based on fraud or other unlawful act more evidence is required to constitute a preponderance than in the ordinary civil case, though such defense would not have to be proven beyond a reasonable doubt. This is because one charged with wrong doing or other unlawful act is presumed innocent of the charge.

In *Virginia Fire, etc., Ins. Co.* v. *Hogue*, 105 Va. 355, 54 S. E. 8, a comprehensive discussion of this particular subject is found in the opinion. In it reference is made to many of the pertinent cases. Syllabus No. 1 provides a clear statement of the rule in Virginia. It is : "In an action on a policy of insurance against fire, when the defendant relies on fraud, false swearing, or other unlawful act, to relieve him from liability on his contract, the burden of proof is on the defendant, and he must establish his defense by clear and satisfactory proof—not proof beyond a reasonable doubt, nor a preponderance in the ordinary sense, but a preponder-

ance of evidence sufficient to overcome the presumption of innocence of moral turpitude or crime. The preponderance rule continues to operate, but more evidence is required to constitute a preponderance than where this presumption does not exist."

It was the duty of the defendant to prove by satisfactory evidence the charge of misconduct of the plaintiff in making improper advances and assaulting the woman customer. We therefore think there was no reversible error in granting instruction No. 4.

The question we have been discussing evidently was not before the court in *United Dentists* v. *Commonwealth*, 162 Va. 347, 173 S. E. 508, for the opinion in that case does not refer to it. This court held there that, "to satisfy," in an instruction was too great a burden to put upon the Commonwealth in that case which was not a criminal case. The preponderance of the evidence rule was applied. There the case was one by the Commonwealth against the United Dentists which had for its purpose the revocation of its charter for the reason it had issued and published false advertisements, and further that the corporation had permitted certain of its employees to practice dentistry without license, in violation of certain charter provisions. We held that the burden was on the Commonwealth, not only to prove the advertisement and that the employees practiced dentistry, but it was also under the burden of proving that the advertisements were false and that the employees had no license to practice dentistry.

In that case we said that the instruction which required the Commonwealth to "satisfy" the jury that the advertisements were "purposely false" was too broad. If the question had been raised that the defendant in issuing the advertisements had committed a fraud no doubt the court would have told the jury that such fraud had to be proven by satisfactory evidence and that it would not be presumed. None of the cases dealing with this feature were cited in that case. We therefore are of the opinion that it is not

binding here and that the better rule is as announced in *Virginia Fire, etc., Ins. Co.* v. *Hogue, supra.*

The other cases relied upon by the defendant in his brief touching this point are not apposite.

It is claimed that the court should not have construed the contract as it did, but should have left its meaning to the jury, and that the defendant should have been allowed to introduce parol evidence to show its meaning and evidence to show the practical construction of it by the parties.

The contract was construed by the court in instruction number 1, which is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff was wrongfully discharged before the 1st day of May, 1946, the defendant's liability to the plaintiff for such breach of contract is the amount which the plaintiff would have been entitled to receive under the contract to May 1, 1946, the expiration date of the contract. This amount is the sum of $75.00 per week plus 5% of the cash receipts of the two stores from May 1, 1945, to November 26, 1945, and of the 608 E. Grace street store from November 26, 1945, to May 1, 1946, and of the cash receipts which would have been made by the 216 E. Grace street store from November 26, 1945, to May 1, 1946, had it continued in the optical business; after deducting from said cash receipts the sum of $75.00 per week for 52 weeks. From this amount so arrived at should be deducted such amount as shown by the evidence, as the plaintiff earned between November 26, 1945, and May 1, 1946, together with the sum of $75.00 per week as was paid the plaintiff during period May 1, 1945, to November 26, 1945."

Notwithstanding this plain language of the contract, "the said employee, shall and will, commencing from May 1, 1945, diligently and faithfuly serve the said company as manager, optical dispenser, and shop man of the said company", the defendant attempts to limit the plaintiff's work under the contract to the premises known as 216 E. Grace street and to eliminate from the contract any and all con-

sideration of the business done at 608 East Grace street. Nowhere in the contract are the stores at 216 East Grace and 608 East Grace mentioned. In every instance the contract discloses that the plaintiff is employed as manager of the *company* and not as manager of any particular store. Again he is to be compensated under the contract by the *company* at the rate of $75.00 per week plus five per cent of all cash receipts of the *company*, over and above $75.00 per week.

The language of the contract as a whole is so perfectly clear and unambiguous that it is difficult to see how one could fail to understand it. This being true, it was the duty of the court to construe it as written. Parol evidence to explain it and evidence of the practical construction of it by the parties was not admissible. There was an entire absence of any ground for this kind of evidence.

The presiding judge interrogated the defendant, the female customer, and other witnesses for the defendant. Counsel for the defendant contends that he went too far in his examination of these witnesses and that it disclosed that he did not believe that the female customer told the truth.

The charge against the plaintiff was a serious one. He was married, living with his wife, and had one child. If the charge were true he might have been subject to a criminal prosecution. Under the law of this Commonwealth he was presumed to have been innocent of it. It was supported by the testimony of one witness alone, namely, the female customer. He stoutly denied the charge. The veracity of these two witnesses was a matter of great importance for the jury and the determinative issue in the case. Of necessity the jury was compelled to believe the testimony of one and reject that of the other. There was no middle ground. It was of the utmost importance that the jury have the benefit of everything that would shed light upon a correct determination of the issue. It was with this background that the presiding judge closely interrogated the witnesses. Matters which occurred to him and

which affected the credibility of the witnesses, and which previously had not been placed before the jury he sought to bring out. In the light of these circumstances, in this particular case, we do not think that he committed reversible error.

There are other assignments of error which we have maturely considered but we do not think they are meritorious.

The judgment is accordingly affirmed.

*Affirmed.*