Ruth **TALIAFERRO** et al., Plaintiffs,

v.

Vergil **DYKSTRA** et al., Defendants.

Ruth Smith **TALIAFERRO**, Plaintiff,

v.

Henry I. **WILLETT**, Jr., et al., Defendants.

Civ. A. Nos. 73–0584–R, 75–0298–R.

United States District Court, E. D. Virginia, Richmond Division.

Jan. 10, 1977.

Ruth S. Taliaferro, pro se.

Philip J. Hirschkop, John D. Grad, Alexandria, Va., for plaintiffs.

Walter H. Ryland, D. Patrick Lacy, Jr., Diana J. Pioske, Robert P. Kyle, Richmond, Va., for defendants.

### MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Ruth Taliaferro, brings these actions under 42 U.S.C. § 1983 to redress alleged sex discrimination practiced at Longwood College, a Commonwealth of Virginia institution of higher learning, and to challenge the constitutionality of her "forced" retirement from that institution. The sex discrimination charge is pursued in the form of a class action [1] while the retirement issue, which is not gender related, is presented solely as an individual action. Plaintiff seeks monetary, declaratory and other appropriate relief. Defendant Willett is the current President of Longwood College and defendant Daniel is the Rector of the Board of Visitors. Jurisdiction is attained pursuant to 28 U.S.C. § 1343(3). The Court having heard the evidence and considered the arguments of counsel, now makes its findings of fact and conclusions of law.

### I. Sex Discrimination:

The allegation of sex discrimination practiced against the plaintiff and the class she represents centers on the promotions and salaries granted to various faculty members. With regard to the class claims, the evidence was largely statistical. For the reasons which follow, the Court concludes that women faculty members at Longwood College were not treated differently from their male counterparts. The evidence reflects that from 1955 to 1975, women have received exactly one-half of the 168 total promotions given. Moreover, since 1967 when Dr. Willett became President of Longwood College, there have been a total of seven chairmanship vacancies in the academic departments. Three females and four males have been appointed to these positions.

Plaintiff presented statistical evidence which reflected that females were compensated at a lower rate than comparable males. The utility of the statistics is, in the Court's view, quite limited as they comingle persons who are paid on a twelve-month basis with those who are compensated only ten months per year. This latter group of persons, while paid on a ten-month basis, actually work only nine months per year. The twelve-month personnel, numbering five out of a total full-time employees of approximately 120, are, however, compen-

---

[1] This action was tentatively declared a class action by an order dated March 6, 1974. For the reasons stated in that order and those stated in the companion case of *Dyson v. Lavery*, 417 F.Supp. 103, 105–06 (E.D.Va.1976), the Court takes this opportunity to order final class certification. The defendants' asserted Eleventh Amendment defense is rejected for the reasons stated in *Dyson v. Lavery, supra*, 417 F.Supp. at 106–109.

sated for a full year of service. The Court concludes that the plaintiff's statistics do not fairly reflect this distinction. Excluding the five twelve-month personnel in the comparison, the salaries of men and women faculty members are about equal for the period of time that Dr. Willett has been associated with Longwood College. Moreover, there is insufficient evidence to give rise to a conclusion that the defendants discriminated against women in the selection of twelve-month personnel. The Court is satisfied that as to the class aspect portion of this litigation, the plaintiff has failed to bear the required burden of proof.

Mrs. Taliaferro's individual claim of sex discrimination must likewise fail. Although there is substantial evidence to support a finding of sex discrimination at her initial hiring,[2] the defendants in this action were not parties to that discriminatory conduct. In order to recover damages in an action brought under 42 U.S.C. § 1983, a plaintiff must establish an affirmative link between the defendants and the conduct complained of. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). *See also Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974). It is the conduct of the named defendants to which the Court must look in determining whether the plaintiff is entitled to relief.

There are no allegations nor was there any evidence that defendant Daniel had any personal involvement in Mrs. Taliaferro's employment. Dr. Willett, as the Court has already indicated, had no prior association with Longwood College until he became its President in December of 1967. The evidence does reflect that at that time at Longwood there was pending a general backlog of promotions affecting both men and women alike. In the spring of 1968,

Dr. Willett recommended that a number of faculty members, including the plaintiff, receive what he viewed to be long overdue promotions. The Board of Visitors adopted those recommendations. Plaintiff was then elevated to the position of Associate Professor and received a $900 raise in salary. The evidence discloses that no person benefited from a larger salary increase. Mrs. Taliaferro, however, informed Dr. Willett that it was her view that she was entitled to a full professorship. He in turn advised her that in light of the promotion to the associate level, which she at that time had just received, insufficient time had elapsed to warrant a promotion to full professor.

Plaintiff contends that Dr. Willett discriminated against her in two respects. First, she argues that men were promoted in a relatively shorter time and received a comparatively larger advance than she. Secondly, it is her position that she was unjustly denied a promotion to a full professorship. The first of these positions, in the Court's view, merits little discussion. That Mrs. Taliaferro was not promoted until twelve years of teaching had passed did not set a standard for future promotions. The difficulties Mrs. Taliaferro encountered in securing a promotion prior to Dr. Willett's arriving at Longwood were the product of matters which obviously were in no way attributable to any conduct on the part of the named defendants.[3] The evidence reflects that both men and women under Dr. Willett's administration were promoted in shorter time than was the plaintiff.

Plaintiff's claim that she was entitled to a greater salary increase than those she deemed less qualified than herself is closely related to her complaint concerning her failure to be promoted to a full professorship. Salary and rank are correlated. Moreover, it appears that Mrs. Taliaferro's

---

**2.** The evidence reflects that the plaintiff was hired at a lower rate of pay than her male counterparts. It was uncontroverted that Dr. Lankford offered Mrs. Taliaferro the lower paying position because the men in the department would not like it if she was given a higher position. Dr. Lankford further explained that Mrs. Taliaferro was old enough to understand how these things were.

**3.** Mrs. Taliaferro's department chairman, Dr. Merle Landrum, refused to recommend her, or anyone else, for a promotion until the College promoted Mr. Leeper. Dr. Landrum's obstinance was not gender-based, but rather a personal idiosyncrasy in no way attributable to the defendants.

salary at all times fit comfortably within the range of others at her rank. There were men and women earning salaries both above and below the level of Mrs. Taliaferro's salary. Hence, her claim essentially depends on whether she was improperly denied the rank of professor; and if so, whether such deprivation was sexually motivated.

Plaintiff first approached Dr. Willett on the subject of becoming a full professor immediately after her promotion to the associate level in the spring of 1968. At that time, she was advised that it was too soon after one promotion to be considered for another. It appears that no further action was taken until the fall of 1972. An explanation for this inaction lies in the blockage of normal promotional channels in the business education department. Promotions were traditionally initiated by the department chairman. After the establishment of a committee on promotions in 1971, all promotions were channeled through the committee. When the then chairman stepped down from his chairmanship in 1969, the business education department was headed by several "acting" chairmen. These interim department heads declined to recommend any promotions because of their "acting" capacity. Moreover, Mrs. Taliaferro did not request a promotion from the committee despite her right to so do. In October of 1972, plaintiff again contacted Dr. Willett requesting a promotion. The evidence reflects that this was approximately six months prior to her scheduled retirement. Although Dr. Willett did discuss the matter with the Board of Visitors, Mrs. Taliaferro was advised to proceed through normal channels, i. e., via the committee on promotions. By her own admission and the statements of witnesses who testified in her behalf, the plaintiff sought the promotion at that time more for its symbolic significance than for career advancement purposes.

■ There was evidence that Dr. Willett considered the plaintiff's law degree an equivalent to a Ph.D. and represented it as such to the Southern Association of Colleges and Schools for the purposes of accreditation. No satisfactory explanation was provided as to why some males with Ph.D.'s were given full professorships while the plaintiff was not. The burden, however, rests with the plaintiff to prove she was entitled to this rank. There was no evidence of the specific factors considered, and their relative weight, in rendering personnel promotional judgments. Absent such evidence, the Court cannot conclude that Mrs. Taliaferro was improperly passed over for a promotion.[4]

■ Assuming, however, that Mrs. Taliaferro should have been promoted to professor, the Court finds no evidence that would give rise to a reasonable conclusion that the failure to grant the plaintiff a promotion to a full professorship was motivated by consideration of gender. Indeed, the evidence reflects that since 1968 Dr. Willett's administration has made 116 promotions. Fifty-nine of those were males and 57 females. Thirteen of the 21 persons promoted to full professor have been female. In short, the statistical evidence refutes any conclusion that Dr. Willett discriminated against women in general. Plaintiff's evidence falls short of persuading the Court that he did so with regard to her. Any mistreatment of the plaintiff by these defendants falls in the category of what the Supreme Court described in another context as "incorrect or ill-advised personnel decisions" not rising to the level of a constitutional deprivation. *Bishop v. Wood*, 426 U.S. 341, 350, 96 S.Ct. 2074, 48 L.Ed.2d 684

---

4. The plaintiff's failure to attain full professorship may be due, as alluded to above, to the shortness of time between her promotion to associate professor and her pending retirement. It may also be speculated that Longwood's willingness to give the plaintiff's law degree Ph.D. status was prompted by a need to increase the number of Ph.D.'s on their faculty for accreditation purposes. It may well be that Longwood was attempting to have its cake and eat it too with regard to the plaintiff's law degree. As discussed *infra*, however, the evidence is insufficient to support a conclusion that these defendants were motivated by gender in dealing with Mrs. Taliaferro.

(1976). *See also Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

## II. RETIREMENT

The plaintiff was employed by Longwood College in 1955 and, the defendants admit, was tenured at the time of her retirement in June of 1973. Mrs. Taliaferro retired at the age of 64 but was to turn 65 prior to the commencement of the next fall semester. Plaintiff maintains that her tenure entitles her to continued employment to age 70. Involuntary retirement at age 65, so it is argued, deprives her of her property interest of tenure without due process of law. *Cf. Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Alternatively, Mrs. Taliaferro maintains that the changing of the retirement age by a state college unconstitutionally impaired her contract with Longwood. The defendants, on the other hand, contend that tenure ceases upon retirement and that faculty members may be retired at age 65. Accordingly, it is their view that the plaintiff has not suffered any constitutional deprivation.

■ Plaintiff's rights associated with her tenured status, of course, do not emanate from the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Tenure is essentially a contractual interest. *Browzin v. Catholic University*, 174 U.S.App.D.C. 60, 527 F.2d 843, 848 (1975); *Greene v. Howard University*, 134 U.S.App.D.C. 81, 412 F.2d 1128, 1135 (1969); *Georgia Ass'n of Educators v. Harris*, 403 F.Supp. 961 (N.D.Ga.1975) (three judge Court). The specific rights and duties associated with tenure are to be found in the understandings of the parties.

Such understandings are often reflected in policy statements contained in faculty handbooks. *See, e. g., Browzin v. Catholic University, supra; Rehor v. Case Western Reserve University*, 43 Ohio St.2d 224, 331 N.E.2d 416, 419–20 (1975).

The parties are in accord that their respective understandings of the term "tenure" are set forth in the Longwood College Faculty Handbook, which reads as follows:

> "An appointment with tenure is defined as an appointment by the College which is continuous or *permanent* in nature and which may be terminated by the College only for adequate cause, or by retirement, or under extraordinary circumstances because of financial exigencies."

While there was some evidence relating to the plaintiff's competency to continue teaching and of policy disputes between plaintiff and Dr. Willett, the Court concludes that the sole basis for her termination was Dr. Willett's good faith belief that Mrs. Taliaferro had reached the age of retirement. Retirement alone, however, supplies an adequate justification for terminating a tenured member of Longwood's faculty. Hence, the proper focus of this litigation is not what procedures need be afforded a tenured faculty member prior to his or her termination, but rather the contractual agreement relating to retirement.

■ Plaintiff contends that she had a contractual right to teach until age 70. It is argued that one source of this contractual right is found in the Virginia Supplemental Retirement Act as written at the time the plaintiff became tenured.[5] There is, however, a well-established presumption "that [a statute is] not intended to create private contractual vested rights, but merely declares a policy to be pursued until the Legislature shall ordain otherwise." *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct.

---

5. The Virginia Supplemental Retirement Act is found in Section 51–111.54 of the Code of Virginia. At the time that Mrs. Taliaferro became tenured, the statute simply called for the mandatory retirement of personnel upon their attaining 70 years of age. The statute was amended in 1968 to include the following:

"provided that the employer may provide for the compulsory retirement of his employees at any age from sixty-five to seventy . . . ." The Court accepts Dr. Willett's testimony that when dealing with the plaintiff, he was acting upon his understanding of the tenure system rather than under the above-quoted statute.

98, 100, 82 L.Ed. 57 (1937). *See also, Phelps v. Board of Education*, 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674 (1937); *Berenguer v. Dunlavey*, 352 F.Supp. 444, 452 (D.Del.1972) (three judge Court) (concurring opinion) *vac. as moot*, 414 U.S. 895, 94 S.Ct. 215, 38 L.Ed.2d 133 (1973). Unlike *Anderson v. Brand*, 303 U.S. 95, 104–05, 58 S.Ct. 443, 82 L.Ed. 685 (1938), there is neither statutory language nor a prior course of dealings in the instant case which would overcome the presumption. Accordingly, the Court concludes that Section 51–111.54 of the Code of Virginia is not a term of the plaintiff's contract and does not, by itself, confer any vested rights in the plaintiff.[6]

A second source of the plaintiff's alleged contractual right to continued employment is what the plaintiff has termed the "common law" of Longwood College. It is the plaintiff's position that the retirement policy in effect at the time the plaintiff became tenured supplies the durational limitation of her tenure. While the Virginia courts have not yet addressed the issue, other state courts have reached the same conclusion. *Rehor v. Case Western Reserve University, supra*, 331 N.E.2d at 420; *Lewis v. Salem Academy and College*, 23 N.C.App. 122, 208 S.E.2d 404, *cert. denied*, 286 N.C. 336, 210 S.E.2d 58 (1974).

Although there was conflicting evidence on the subject, the far more credible evidence which the Court accepts supports the Court's conclusion that at the time Mrs. Taliaferro secured tenure faculty members were entitled to remain in their positions until reaching age 70. Persons over 65 years of age could continue teaching but were expected to relinquish their administrative responsibilities. The plaintiff's testimony on this issue was corroborated by that of Dr. Jeffers and Dean Moss. Both of these gentlemen served lengthy careers at Longwood in both teaching and administrative capacities and were familiar with the College's policies in effect at the times pertinent to this action. Indeed, in a 1963 response to an American Association of University Professors' questionnaire on the subject of retirement, the policy of entitlement by tenured faculty members to remain in their positions until age 70 was acknowleged. The Court concludes, therefore, that the plaintiff was vested with the right to continued employment until age 70 absent a showing of adequate cause for termination.

A new retirement policy at Longwood was instituted during the 1968–69 academic year. The new policy permits the President to require the retirement of a faculty member at any time after age 65 has been reached. The defendants cite *Rehor v. Case Western Reserve University, supra*, in support of their contention that a policy may be amended from time to time and validly applied to tenured faculty. That holding, however, was premised on factual findings not present in the instant case. Specifically, in *Rehor* there was a finding that it was the "understanding of the academic community that the retirement policy of a university can be changed . . ." *Rehor v. Case Western Reserve University, supra* at 421. No such understanding has been demonstrated in the instant case. Moreover, in *Rehor* the policy change involved input in faculty committees. Notice of the activities of the committees referred to in *Rehor* was given to faculty members and at least one public hearing was held. The procedures invoked in that case sharply contrast with the unilateral action taken by Longwood College in the instant case.

In holding that Mrs. Taliaferro enjoyed a tenure-based right in continuous employment until reaching age 70, the Court necessarily concludes that the unilaterally imposed involuntary retirement constituted an impermissible deprivation of that right. *See Thomas v. Ward*, 529 F.2d 916 (4th Cir. 1975). Such unilateral action fails to comport with the rudiments of due

---

**6.** In light of this conclusion and the conclusion stated in footnote 5, *supra*, regarding the source of Dr. Willett's actions, the Court finds it unnecessary to rule upon the plaintiff's constitutional assaults on Va.Code Ann. Section 51–111.54 *as amended*.

process.[7] The defendants' conduct herein, however, was predicated upon a good faith and reasonable belief in the legality of their actions. Accordingly, no damages will lie against them in their individual capacities. The defendants are, however, liable in their official capacities regardless of their good faith. *Thomas v. Ward, supra,* at 920–21; *Burt v. Board of Trustees of the Edgefield City School District,* 521 F.2d 1201, 1204 (4th Cir. 1975). It follows, therefore, that Mrs. Taliaferro is entitled to recover the loss of compensation she would have been paid for the term of her employment less the amount she actually earned or might have earned by reasonable effort. *Burt v. Board of Trustees of the Edgefield City School District, supra,* at 1207; *Rudlin v. Parker,* 186 Va. 647, 43 S.E.2d 918 (1947); *Standard Laundry Service v. Pastelinck,* 166 Va. 125, 184 S.E. 193, 195 (1936).

Concluding further that the equitable remedy of reinstatement would in the instant case be inappropriate, the plaintiff's prayer for this relief will be denied.

The parties will be afforded an opportunity to submit their calculations and views as to the precise amount of damages to which the plaintiff is entitled.

An appropriate order will issue.

---

7. Procedures available under the Faculty Status Committee do not purge the constitutional taints surrounding the instant controversy. That committee did not, by design or ability, constitute an effective channel through which the plaintiff could present her claims.