**Delmar KARLEN, Plaintiff,**

v.

**NEW YORK UNIVERSITY, Defendant.**

**No. 78 Civ. 3416 (GLG).**

United States District Court,
S. D. New York.

Feb. 1, 1979.

As Amended Feb. 15, 1979.

Delmar Karlen pro se.

S. Andrew Schaffer, New York City, for defendant.

## OPINION

GOETTEL, District Judge:

Defendant, New York University, has moved under rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff, Delmar Karlen, for failure to state a claim upon which relief may be granted.

Plaintiff is a former professor of law at New York University (retaining, however, the title of "Professor Emeritus"), having been mandatorily retired because of age on August 31, 1977. Prior to retirement he had been an employee of the university since September 1, 1952, first in the capacity of Visiting Professor of Law, and then, since September 1, 1953, as a full Professor of Law. He was granted tenure by the university at the time of his appointment to the permanent faculty in 1953.

Under the by-laws of New York University in effect at the time of plaintiff's receipt of tenure, the mandatory retirement age for faculty members and officers of the university was set at 65 years old. These by-laws were subsequently amended by the university's board of trustees so that effective August 31, 1964, the retirement age was raised to 68. Approximately eight years later, however, the board of trustees, faced by what is alleged to have been a "compelling need" to reduce the size of the faculty to stave off insolvency, once more amended the by-laws so that effective August 31, 1972 the mandatory retirement age was changed back to 65.

Plaintiff, who was then 60 years old, was notified of the reduction in the retirement age by letter from the president of the university. While the plaintiff made no written protest of the university's decision at that time, or at any time prior to August 1, 1977, he alleges that he did orally lodge a protest, to no effect, at a meeting in 1972 with the then dean of the law school, Robert McKay. The plaintiff continued to work for the university from 1972 to 1977, during which period he accepted four reappointments and salary increases. Since his retirement from the university, plaintiff has been eligible to receive a retirement adjustment allowance, and an additional pension fund contribution, both of which have been provided by the defendant as compensation for the change in the retirement age.*

Plaintiff contends that the university breached its contract with him by forcing him to retire at 65 rather than 68. As to this claim plaintiff seeks damages. He also alleges that the exception for tenured professors contained in the Federal Age Discrimination Act, Pub.L.No.95–256, § 3(a), 92 Stat. 189 (April 6, 1978) *amending* 29 U.S.C. § 631(d), is unconstitutional. As to this claim plaintiff seeks declaratory relief.

■ The defendant has moved under Fed.R.Civ.P. 12(b)(6) to dismiss both claims. In ruling on such a motion, the Court must accept the allegations contained in the complaint as true and may not dismiss the complaint "unless it appears 'to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.'" *Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir. 1968), *quoting Barnes v. Merritt,* 376 F.2d 8, 11 (5th Cir. 1967). Consequently, the present question is not whether there is a likelihood of success, but rather whether there is a mere possibility of success on the merits.

The plaintiff contends that his employment agreement with the defendant constituted a binding contract under which the university was obligated, except in the case of adequate cause, financial exigency or discontinuance of a part of the school, to employ him until age 68, and that any modification of this agreement required mutual consent. Plaintiff bases his argument on language in the university's handbook which refers specifically to "retirement at age 68," and he contends that the use of such specific language, coupled with the promise that no future action of the board of trustees would take away the status of permanent tenure already acquired, served to negate the general power of the board to amend the by-laws and precluded any unilateral lowering of the mandatory retirement age. This construction, while possible, seems strained. Contracts should be read "by reference to the norms of conduct and expectations founded upon them," especially when dealing with "contracts in and among a community of scholars." *Greene v. Howard University,* 134 U.S.App.D.C. 81, 88, 412 F.2d 1128, 1135 (1968); *see Krotkoff v. Goucher College,* 585 F.2d 675, 680 (4th Cir. 1978). Generally, courts have found that the academic community understands that a university may, if acting in good

---

* Plaintiff has in fact received for the 1977–78 academic year $1,942.00 as a retirement adjustment allowance and a lump sum payment of $2,870.00 as an additional contribution to his pension fund. These funds are in addition to whatever pension the plaintiff would otherwise be ordinarily entitled to receive, and have been accepted by him as set-offs against the damages claimed, without prejudice to the alleged breach of contract.

faith, unilaterally modify its retirement age so long as the new age it has chosen is reasonable and is applied uniformly to all faculty members. *See Drans v. Providence College,* R.I., 383 A.2d 1033 (1978); *Rehor v. Case Western Reserve University,* 43 Ohio St.2d 224, 331 N.E.2d 416 (Ohio), *cert. denied,* 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 390 (1975). In addition, it has been held that a reservation of authority to amend university policy, such as that which is contained in the defendant's by-laws, gives a university the power to modify the mandatory retirement age. *Rehor v. Case Western Reserve University, supra.* *See also Fazekas v. University of Houston,* 565 S.W.2d 299, 305 (Tex.Civ.App. 1st Dist. 1978) ("[t]he provision requiring retirement at [a specified age] does not constitute a contractual limitation on the powers of the Board of Regents to determine that an earlier retirement age is not in the best interest of the University.").

While it thus seems likely that New York University had the authority unilaterally to modify its retirement policy, so long as such modification was reasonable and done in good faith, it may also be true that, as the plaintiff alleges, in so doing the university became obligated to provide either reasonable financial arrangements or transition provisions for those adversely affected faculty members. *See Drans v. Providence College,* R.I., 383 A.2d 1033; *Taliaferro v. Dykstra,* 434 F.Supp. 705 (E.D.Va.1977); *Academic Retirement and Related Subjects,* 36 AAUP Bull. 97, 110 (1950). *See also AAUP Policy Documents and Reports* (1977). In this regard it was noted by the court in *Drans, supra,* 383 A.2d at 1041, that the university must make "some type of accommodation so that the economic security expectations of the tenured may be preserved."

In the instant case the defendant, although not conceding that it was compelled to do so, has in fact provided extra retirement benefits. Even if the university was obligated to grant reasonable extra benefits, it may be that those already provided have satisfied this requirement. The plaintiff, however, claims that the benefits pro-

vided by the university were woefully inadequate. Whether the university had a contractual obligation to provide reasonable financial arrangements or transition provisions; and if so whether the benefits provided met this obligation, are issues which may not be decided on a motion to dismiss, but must be left for a later determination at trial.

The university argues that the reduction in the mandatory retirement age can be separately and independently justified by the existence of financial exigency. The plaintiff, on the other hand, disputes the existence of any such dire financial situation and argues that even if such situation did exist, the actions taken by the defendant in response to it were done in bad faith.

It is clear that the plaintiff will have a difficult time proving that New York University was not faced with a financial emergency in 1972. At that time the university was confronted with both a large deficit and an even larger projected deficit. In addition, the recent holding in *Krotkoff v. Goucher College,* 585 F.2d at 681, that the "existence of financial exigency should be determined by the adequacy of [the] college's operating funds rather than its capital assets," contradicts the plaintiff's assertion that the university's ownership of large capital holdings, subsequently sold for $115,000,000, eliminated any financial emergency.

Nevertheless, it is necessary that "not only must the financial exigency be demonstrably *bona fide* but the termination because of that exigency must also be *bona fide.*" *American Association of University Professors v. Bloomfield College,* 136 N.J. Super. 442, 447, 346 A.2d 615, 617 (App.Div. 1975). Thus, even if the plaintiff cannot disprove the university's claim of financial exigency, he can still state a claim upon which relief could be granted by alleging that the defendant's action in lowering the mandatory retirement age was a bad faith response to its economic condition. The plaintiff has so alleged. He asserts that this bad faith was demonstrated by the

university's "continuing to hire new faculty members at an undiminished if not accelerating pace" at the same time as it was forcing its older faculty members to retire prematurely. Since there are issues of material fact which exist as to the question of bad faith, this question must be left for later determination.

■ The defendant asserts that the plaintiff, by both his conduct and statements, waived any right he may have had to contest the university's decision to lower the mandatory retirement age. The Court cannot, as a matter of law, agree. We can see nothing in the plaintiff's acceptance of four apparently routine salary increases, or in his receipt, without objection, of four letters notifying him of his continuing employment as a tenured professor (neither of which required the plaintiff to sign any form or acknowledge any agreement), which could constitute an implied waiver. As stated in *Drans v. Providence College*, 383 A.2d at 1038, "[t]he professor cannot be faulted for continuing in the employ of the college while contesting the newly instituted mandatory retirement policy." *But see, Rehor v. Case Western Reserve, supra.*

■ Nor can consent be implied from the use of the title "Professor Emeritus of New York University" in connection with a description of the plaintiff in an advertisement for his new book, a use which plaintiff asserts he never authorized, or from the failure of the plaintiff to utilize what are apparently discretionary internal university grievance procedures, which he asserts would have been futile. Whether the plaintiff did in fact actually or impliedly consent to the change in the retirement age remains a disputed question of fact which cannot be determined at this time.

■ The Court similarly finds the question whether this action is barred by the equitable doctrine of laches to be premature. The defense of laches is an affirmative defense under Fed.R.Civ.P. 8(c) and properly should be raised in the defendant's answer and not upon a motion to dismiss. Even if the Court were to reach this question, however, issues of fact (for instance as to the extent of the plaintiff's objections to the retirement policy change, or as to the extent of the defendant's reliance on the plaintiff's alleged silence) abound which would prevent decision at this time.

■ The plaintiff may have a difficult time proving the necessary elements of his first cause of action. Nevertheless, we cannot say at this time that, as a matter of law, the plaintiff will be unable to prove sufficient facts in support of his claim. Accordingly, defendant's motion as to the first count of the complaint is denied.

■ In his second cause of action the plaintiff is seeking a declaratory judgment holding the recent amendments to the Age Discrimination Act unconstitutional. Before the Court can consider granting such relief, however, it must first be determined whether there exists an "actual controversy" within the meaning of 28 U.S.C. § 2201 so as to present a justiciable issue. In making this determination the Supreme Court has stated, quoting from *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 513, 85 L.Ed. 826 (1941), that "[b]asically, the question in each case is whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers Assn. v. McMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972). *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241, 57 S.Ct. 461, 475, 81 L.Ed. 617 (1937).

A controversy is ripe for decision if it presents the plaintiff with a present danger or dilemma, and not a danger or dilemma which is contingent on the happening of certain future, hypothetical events. *See Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *M&M Transportation Co. v. U. S. Industries Inc.*, 416 F.Supp. 865, 870 (S.D.N.Y.1976); *Kiser v. Johnson*, 404 F.Supp. 879 (M.D.Pa.1975).

The challenged portion of the Age Discrimination Act did not go into effect until

after the plaintiff had been retired from the university. Thus, he was unable to challenge the law while still an active member of the faculty.

The plaintiff now claims that his suit for a declaratory judgment is ripe for adjudication. He alleges that once his breach of contract claim has been established (Count 1), that this will lay the foundation for his claim that he has been unconstitutionally deprived protection by the Age Discrimination Act (by proving that he should still have been employed by the university at the time the law went into effect). While there may be some merit to this contention, the Court believes that there are far too many contingencies which make adjudication of this issue inappropriate. Plaintiff is not currently a member of the New York University faculty, nor is he seeking injunctive relief to restore him to that faculty. In this regard it should be noted that the plaintiff's status as Professor Emeritus of Law does not make him a current employee of the university. The title of Professor Emeritus is an honorary one which is conferred, upon retirement, to full professors who have served the university with distinction. Even assuming that he has a right to employment at New York University, it is unclear whether the plaintiff would avail himself of this opportunity. (He is currently employed as Tazewell Taylor Visiting Professor of Law by the Marshall-Wythe School of Law of the College of William and Mary.) As a result, the Court can see no present danger or dilemma that the plaintiff faces as a result of the exemption for tenured professors to the Age Discrimination Act. The issues raised in Count II of the plaintiff's complaint are not justiciable at this time.

Accordingly, the Court denies the defendant's motion as to Count I and defers ruling as to Count II.

SO ORDERED.