COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Judges O'Brien, Causey and Bernhard
Argued by videoconference


ADO HOME SERVICES, LLC

v.    Record No. 0414-24-4

KRISTIN L. FRYKMAN

OPINION BY
JUDGE DAVID BERNHARD
JUNE 10, 2025

KRISTIN L. FRYKMAN

v.    Record No. 0458-24-4

ADO HOME SERVICES, LLC


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

James P. Magner (Magner Law, PLLC, on briefs), for ADO Home
Services, LLC.

Kristin L. Frykman, *pro se*.


These consolidated appeals arise from a residential construction contract dispute between

ADO Home Services, LLC ("ADO") and Kristin L. Frykman, involving cross-allegations of breach

of contract, disputes over available remedies, and requests for attorney fees under the parties'

written agreement. ADO advances three assignments of error, challenging both pretrial and

posttrial rulings. First, ADO challenges the pretrial order sustaining Frykman's demurrer with

respect to the enforcement of its mechanics' lien. Second, ADO submits the trial court erred by

"disregarding" the testimony of its expert witness, Scott Brinser, and by awarding only nominal

damages of $1,000 against Frykman. Finally, ADO contends the trial court erred in denying its

claim for attorney fees.

Conversely, Frykman cross-appeals, asserting errors in the trial court's interpretation and application of the contract's terms. Frykman contends the trial court erred by failing to enforce the "remedy" included in Paragraph 10 of the contract, which, she claims, mandates the calculation of damages to the contracting parties and the return of any overpayments from ADO to Frykman. Frykman also submits the trial court erred in finding that she terminated the contract without cause and was thus the first party to breach the contract. Frykman further asserts she terminated the contract because ADO made statements amounting to repudiation and anticipatory breach, and ADO failed to operate in good faith. Frykman likewise appeals the award of nominal damages, asserting that "no damages were proven, and the evidence already showed unjust enrichment of ADO." Finally, Frykman contends the trial court erred in "denying an attorney fee award to . . . Frykman without [performing] an analysis of [the] prevailing party status."

This Court addresses the parties' claims in turn. As to Frykman's demurrer, resolving an issue of first impression, this Court agrees with the trial court that it lacked jurisdiction under Code § 43-22 to adjudicate ADO's mechanics' lien in Loudoun County due to the property and the owner both being located in Alexandria, Virginia. The statute requires that such liens be enforced in the jurisdiction where the subject property is located or where the owner resides, regardless of any conflicting forum selection clause.

As to ADO's second assignment of error, we discern no clear error in the trial court's decision to discount the testimony of ADO's expert, Scott Brinser. The award of nominal damages was not plainly wrong, and the record supports the court's finding that ADO failed to substantiate its claimed damages with reasonable certainty. Correspondingly, Frykman's related third assignment of error—challenging the nominal damages award—fails as well.

With respect to Frykman's first assignment of error, the trial court correctly concluded that Paragraph 10 of the contract, which specifies a remedy only in favor of ADO, neither limits ADO's

recoverable damages in the event of breach nor entitles Frykman to reimbursement for alleged overpayments. The court also correctly found that Frykman was the first party to materially breach the contract, concluding that ADO had not committed any prior anticipatory repudiation or breach that would excuse Frykman's performance.

Regarding attorney fees, the trial court acted within its discretion in denying ADO's request. The contractual provision on which ADO relies predicates recovery on proof of a payment default—an element ADO failed to establish. Likewise, Frykman is not entitled to attorney fees, as her prevailing defenses, including the demurrer and the dismissal of the quantum meruit claim, arose outside the contract's enforcement mechanisms.

Therefore, for the foregoing reasons, and as more fully set forth below, this Court affirms the judgment of the trial court.

BACKGROUND

According to the complaint, on June 20, 2019, ADO and Frykman entered into a contract[1] for the construction of a residential addition to Frykman's home in Alexandria, Virginia (the "Property"), in exchange for $369,591. Payment was structured according to the draw schedule incorporated into the agreement. Under the draw schedule, Frykman agreed to pay $83,000 as an initial deposit and make draw payments following the completion of certain enumerated tasks. The agreement listed an estimated completion date of December 1, 2019, but delays caused by untested soil conditions, change orders, and city inspections extended the project's timeline.

---

[1] The complaint alleged that a copy of the contract was attached thereto as Exhibit A. The exhibit comprised a four-page signed written agreement and various change orders; however, at trial, ADO argued, and the trial court agreed, that the contract consisted of the documents collectively admitted as Plaintiff's Exhibit 1: the same agreement, the incorporated draw schedule, and the incorporated specification sheet. Several contractual provisions are relevant to these appeals, including Paragraphs 4, 10, and 15(c).

The complaint alleged that "in October 2019, [Frykman] failed to make a required draw payment after [the] framing work was completed and inspected." ADO "continued to work on the project throughout October and into November" while pursuing payment. Frykman issued a termination notice to ADO on November 7, 2019.[2] At the time, Frykman allegedly "had an outstanding balance of $57,516.03." On January 30, 2020, ADO filed a memorandum of mechanics' lien against the Property for $28,718.44. The lien was recorded in the City of Alexandria.

On June 10, 2020, ADO filed its complaint in the Circuit Court for Loudoun County, alleging Count 1, the enforcement of its mechanics' lien, Count 2, breach of contract, and Count 3, quantum meruit.[3] Frykman filed a demurrer as to Count 1 contesting the trial court's statutory jurisdiction to enforce the mechanics' lien. She argued that the mandate imposed in Code § 43-22 required ADO to file suit for enforcement in the Alexandria Circuit Court. In addition to the demurrer, Frykman filed an answer and a counterclaim for breach of contract. The parties submitted memoranda on the demurrer. On January 20, 2021, the trial court sustained Frykman's demurrer "on jurisdictional grounds," dismissing Count 1 of the complaint.[4]

---

[2] On demurrer, this Court disregards the complaint's legal conclusion that the "termination was without cause."

[3] The complaint recited the contract's forum selection clause, stating that "[a]ny legal action under this Agreement shall be brought in the courts of Loudoun County, Virginia, and the parties agree to submit to the jurisdiction and venue of such courts." The complaint further contended that "[b]ased upon the foregoing, jurisdiction and venue are appropriate in the Circuit Court for Loudoun County." This Court discounts this legal conclusion disguised as a fact. *Theologis v. Weiler*, 76 Va. App. 596, 600 (2023).

[4] Because Frykman's challenge was based solely on a statutory ground and the circuit court ruled only on jurisdiction, the narrower issue of whether the forum selection clause, confining "legal action" to that brought "under this Agreement," reaches the enforcement of a mechanics' lien is not properly before this Court. *See Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review.").

Trial was held without a jury on November 19-22, 2022. ADO called several witnesses to testify, including Dean Baker ("Dean"), owner of ADO, Tonya Baker ("Tonya"), Dean's wife, and Scott Brinser. Tonya testified that during the Frykman project in 2019, she performed administrative duties and part-time job-costing duties for ADO. In particular, she collected checks from customers, compiled estimates, labeled and entered receipts into QuickBooks, and prepared the draw invoices. Tonya utilized QuickBooks to generate the payroll for Dean and the subcontractors. She testified that Dean and the subcontractors "would clock in and clock out" using CoConstruct, construction management software, and that she would enter the hours or clock in for Dean when he faced cell connectivity issues at the site. "Towards the end" of the project, Frykman requested an accounting of expenses from ADO.[5] Tonya testified that job costing was not contemporaneous and took "a few months" to complete. Initially estimating the project cost as "around [$]225,000 or [$]227,000," Tonya later clarified, based on handwritten notes not admitted into evidence, that the total was $225,174. This figure included "the actual physical items . . . purchased, the actual hours worked on the project," including Dean's time, "and the overhead to sustain the company." Tonya stated that the "total contract cost of the job, based on our original contract, would have been [$]288,000" and that Frykman paid $195,000 to ADO. On cross-examination, Tonya explained that the $288,000 figure included a "profit on items completed." She stated that Brinser was hired by ADO to perform its bookkeeping, effectively replacing her.

Brinser was qualified by the trial court as an expert "in corporate accounting and small business accounting." Brinser's company, Brinser Consulting, LLC, was engaged by ADO in November 2020 to "review all the books" and "to make sure that the records were up to date." Brinser did not author any reports discussed at trial or provide an opinion to the court. He

---

[5] Tonya indicated she did not think Frykman was entitled to see the actual costs.

reviewed receipts, bank statements, and credit card statements and reconciled them with QuickBooks, "the accounting system that [ADO used] to record profits and losses, the disbursements and invoices." Brinser explained that the software enabled businesses to attribute expenses and invoices to a particular client using project codes and conceded that it was "possible to add [those tags] after the fact." Brinser affirmed that all the information was appropriately tagged under the Frykman project. Brinser conceded that "[he] would have used CoConstruct and QuickBooks as . . . the two main sources of information." Brinser testified that he did not make any changes to the data entered in either system.

Furthermore, both software programs generated reports upon which Brinser relied. The "item actual cost detail report," a QuickBooks report, populated "direct hard coded expenses for the project," including paychecks. Another document "looked to be a sheet that was done in something other than QuickBooks" and contained both direct costs and labor costs. As to hourly entries, Brinser acknowledged that he could not speak to their accuracy: "By the time I looked at the entries, I was only looking at the entries that had been entered. I did not know the nature of how they got in." In the third-party CoConstruct report, the names were missing for several persons recording the hours. Certain hours were also entered without a time period. Brinser could not explain either absence: "someone would have put these hours in, but I do not know who." Brinser was repeatedly asked about his expertise when formulating the labor reports.

> Q. Did you use any of your expertise to generate this particular labor report?
> A. Well, you have to know how to click a button.
> Q. Pardon?
> A. You have to know how to click a button to get the report.
> Q. That's the expertise you use?
> A. There's some people who don't know how to do that, yes.
> Q. I hope we're not sarcastic here, because there's a question whether sarcasm is binding. That's the expertise you use, you click the button?
> A. Yes, this would have been a report that I would have helped generate, yes.

Brinser testified that he also "pushed the button" to "run [the] item actual cost detail [report]." On the issue of tolls, Brinser stipulated that while he confirmed the bank statements against the allocated charges, he did not question or discount the actual charges themselves. Brinser opined that the cost of the job was $224,000 and that ADO was entitled to payment under the contract.[6]

On February 6, 2024, the trial court issued an oral ruling. The court denied Frykman's motion to strike ADO's claims of quantum meruit and breach of contract. The court concluded ADO had proven by a preponderance of the evidence that the parties entered a contract, and the "agreement . . . [was] memorialized in . . . the labeled agreement, the draw schedule and the [specification] sheet."

Turning to the breach of contract claims, the trial court first evaluated Frykman's contention that ADO "invited [itself] to be terminated and/or anticipatorily breached the contract." Frykman's factual theory rested largely on statements made during a meeting between Dean, Tonya, and Frykman at a local Starbucks in October 2019. The court made specific findings regarding several of these admissions. First, the court held that Dean's "admission that [ADO] would not complete the work by December 1, 2019," did not violate the contract because "December 1, 2019 per the clear words of the contract was an estimated completion date." The court also found that Frykman's statement, "I need to get someone who will finish the job by December 15th or pay me $10,000 a day if they are late," did not constitute an "invitation" for termination. The court reasoned that Frykman posed "a hypothetical situation, not an existing situation, which I think are materially different."

Further, Dean's "reaction was to express his disbelief . . . that [Frykman] could broker such an arrangement with any contractor." "[He] in essence was challenging her to make the hypothetical real"—and only after that, could they discuss cancelling the contract. Finally, Dean's

---

[6] Brinser confirmed that Frykman paid ADO $195,000.

statements, "you need to find somebody else to do the contract . . . and you need to replace me," also did not to the trial court constitute "an unambiguous statement" consenting to termination. In sum, the court held that ADO did not breach the contract "at any time prior to being terminated."

The trial court next evaluated ADO's assertions that Frykman breached the contract by "bringing in a contractor to perform work on the job without consulting [ADO]"; by failing to obtain a plat as required by the city leading to construction delays; and by failing to make a required draw payment in October 2019. Applying principles of contract interpretation, the court held that these actions did not violate the contract. Nevertheless, the court concluded that Frykman breached the contract by terminating ADO, thereby "preventing the contractor from performing the work as articulated in paragraph 10 of the contract." The termination was not excused because Frykman's only argument (a claim of first breach by ADO) was already refuted by the court.

The trial court combined its ruling on the motion to strike Frykman's counterclaim with its consideration of the merits of the counterclaim. First, the court rejected the contention that ADO breached by failing to account for expenses incurred," finding that "Paragraph 10 did not require accounting for expenses just because it talks about a remedy or a breach by a client." The court held that Frykman's contention concerning false invoices and making demands for payments that were not due also did not constitute a breach because "[i]t's not something that was part of what was bargained for and promised in the contract." The court addressed several more of Frykman's contentions (e.g., failure to conform to industry standards, failure to pass inspection, excessive delays), finding that not one constituted a breach by ADO under the contract. Thus, Frykman was deemed the first party to breach the contract. The court took ADO's motion to strike Frykman's counterclaims under advisement but in dismissing the counterclaim, the motion was rendered moot.

On the issue of damages, the trial court found ADO's allegations "highly unspecific," "conclusory," and "circular," stating:

> When you boil it down, all we have is Mr. and Mrs. Baker
> concluding that $57,000 is the amount of damages. Actually, when
> you boil that down further, you have Mr. Baker saying that the
> damage because that's what Mrs. Baker said it was because that's
> what she had calculated based on information that was described, but
> was not presented to the Court.

Furthermore, "[t]he expert testimony presented [by] Mr. Brinser . . . was not persuasive to the [c]ourt at all." The court concluded that Brinser's testimony lacked independent value: "His testimony didn't really do much except – I'm [oversimplifying] this – but that [Brinser] saw Mrs. Baker's conclusions and found that they were correct because she said it was correct and because there are documents, again, which were not admitted into evidence, that support the amount." The court further discounted "Brinser's analysis because the evidence does not exclude that he makes assumptions and speculates . . . to the notion that the information that he saw were actual expenses incurred for the Frykman project." Brinser also appeared "relatively uninformed" about certain expenses like the toll charges.

Consequently, the court ruled "there was not information before the [c]ourt to allow [it] to make a determination [about] damages." The trial court awarded nominal damages against Frykman in the amount of $1,000 for the breach of contract. The trial court found for Frykman on the quantum meruit claim. In response to Frykman's question about the return of overpayments, the court found that she did not have a right to damages under Paragraph 10 of the contract.

The final matter was attorney fees. The trial court held that the evidence adduced was speculative: "the evidence of the attorney's fees was testimony by Mr. Baker. I don't have the exact figure, but I'm assuming about $30,000 . . . facially that testimony is an assumption that's speculative." Further, "on that evidence the [c]ourt had no way of determining what, if any, amount

of fees charged was reasonable."[7]  Considering the totality of the circumstances, and for reasons

detailed below, the court declined to award attorney fees to ADO:

> The award of fees in paragraph 4 is based on a default and
> payments of amounts due pursuant to the contract.  Based on the
> evidence in this case and the Court's findings, the failure of the
> Defendant to pay what was owed under the contract, that is -- as
> the Court has found it, she breached by terminating under
> paragraph 10 would be for Ms. Frykman to pay for work that was
> performed.  But also based on the evidence the amount claimed by
> the Plaintiff has not been reasonably substantiated by the Plaintiff
> to the Defendant just as the Court has found it was not
> at trial.  So consequently where the [attorney] fees are linked to
> default in payment and not just to the simple breach, the Court
> finds that because I don't know how possible it would have been
> for Ms. Frykman to satisfy the payment when it hasn't been
> substantiated, the Court finds that an award of [attorney] fees and
> cost is not appropriate.

The trial court memorialized the February 6 oral ruling in its February 14, 2024 order.

With respect to ADO's breach of contract claim, the court entered a judgment of $1,000 against

Frykman in favor of ADO.  The court dismissed with prejudice both ADO's quantum meruit

claim and Frykman's counterclaim for breach of contract.  Frykman moved for reconsideration,

which the court denied.  ADO and Frykman appealed.

ANALYSIS

In these consolidated appeals arising from a contract dispute over the construction of a

residential addition, ADO challenges the trial court's dismissal of its mechanics' lien claim, the

award of only nominal damages, and the denial of attorney fees.  In her cross-appeal, Frykman

---

[7] The trial court deemed unreasonable a specific fee request of $1,500 associated with briefing, further reducing ADO's claim.

- 10 -

contests the trial court's interpretation of the contract, its allocation of fault, and its denial of

restitution and attorney fees.[8]  This Court proceeds to resolve these claims.

I.  ADO's Assignments of Error

A. *The trial court did not err in sustaining the demurrer to ADO's mechanics' lien claim because Code § 43-22 requires that such lien be enforced in the jurisdiction where the subject property or its owner is located, regardless of any contrary forum selection clause.*

This appeal presents a question of first impression: whether a forum selection clause may

override the filing requirements set forth in Code § 43-22 for enforcing a perfected mechanics' lien.

The mechanics' lien statutes restrict enforcement actions to the court of equity where the subject

property is located or where the property owner resides.  As discussed below, the plain language of

the statutory scheme admits no exception permitting parties to circumvent this limitation through

contractual forum selection.

This Court reviews the circuit court's decision to sustain a demurrer de novo.  *Givago*

*Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021).  The Court accepts as true all

well-pleaded factual allegations in ADO's complaint that are sufficiently definite to support a legal

claim.  *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Squire v. Va. Hous. Dev.*

*Auth.*, 287 Va. 507, 514 (2014)).  Reasonable inferences are also accepted; unreasonable inferences

and legal conclusions disguised as facts are not.  *Id.*; *Theologis v. Weiler*, 76 Va. App. 596, 600

(2023).  Further, the demurrer applies to the complaint and any documents attached to it.  *Mansfield*

*v. Bernabei*, 284 Va. 116, 121 (2012).

---

[8] The judgment of a trial court sitting without a jury is reviewed for clear error while its rulings of law are reviewed de novo.  *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011).  "[This Court] consider[s] the evidence and all reasonable inferences fairly deducible from it in the light most favorable to the prevailing party below."  *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017).

"A mechanic's lien was '[un]known to the common law or to courts of equity,' and therefore is purely 'a creature of the statute' allowing for its creation."[9] *Synchronized Constr. Servs. v. Prav Lodging, LLC*, 288 Va. 356, 363 (2014) (alteration in original) (quoting *S. v. R. R. Co. v. Miller*, 80 Va. 821, 826 (1885)); *Cain v. Rea*, 159 Va. 446, 452 (1932) (Under statutory predecessors, a mechanics' lien "attaches by operation of law when a contract has been entered into and the work is done, or materials furnished, which adds to the value of the property."). "The object of the law in creating liens in favor of mechanics was to secure to a deserving class of men the fruits of their labor." *Bristol Iron & Steel Co. v. Thomas*, 93 Va. 396, 400 (1896); *see also Donohoe Constr. Co. v. Mt. Vernon Associates*, 235 Va. 531, 538 (1988) ("[T]he General Assembly enunciated a policy consideration that those furnishing labor and materials in construction should be paid or have recourse by lodging a lien against the property benefitted by their labor or material.").

Under Code § 43-3, "all persons performing labor . . . for the construction . . . of any building or structure permanently annexed to the freehold . . . shall have a lien, *if perfected as hereinafter provided*." (Emphasis added). "Being in derogation of the common law, 'there must be a substantial compliance with the requirement of that portion of the statute which relates to the creation of the [mechanic's] lien; but . . . the provisions with respect to its enforcement should be liberally construed.'" *Synchronized Constr. Servs.*, 288 Va. at 363 (alteration in original) (quoting *Am. Standard Homes Corp. v. Reinecke*, 245 Va. 113, 119 (1993)). "That is to say, a party must strictly comply with the 'specific time frame and in the manner set forth in the statutes' to perfect its mechanic's lien, 'or the lien will be lost.'" *Id.* (quoting *Britt Constr., Inc. v. Magazzine Clean, LLC*, 271 Va. 58, 63 (2006) (collecting cases)). Here, the demurrer does

---

[9] Though "mechanic's lien" and "mechanics' lien" are referenced interchangeably in precedent, the latter iteration tracks exact reference to the statutory scheme. *See* Title 43 (Mechanics' and Certain Other Liens).

not challenge the lien's perfection, but rather whether ADO filed its enforcement action in the proper forum under Code § 43-22.

ADO contends the trial court erred in sustaining the demurrer because "the forum selection clause . . . was valid and enforceable," and Code § 43-22 does not prohibit "the enforcement of a mechanic's lien in a jurisdiction other than the one in which it was recorded." Conversely, Frykman argues that § 43-22 requires that suit be initiated in the jurisdiction where the property is located or the owner resides, in this case, the City of Alexandria. "[A]n issue of statutory interpretation is a pure question of law which [this Court] review[s] de novo." *Harris v. Commonwealth*, 83 Va. App. 571, 581 (2025) (second and third alterations in original) (quoting *Taylor v. Commonwealth*, 298 Va. 336, 341 (2020)).

Code § 43-22 states,

> *The liens created and perfected under this chapter may be enforced in a court of equity by a bill filed in the county or city wherein the building, structure, or railroad, or some part thereof is situated, or wherein the owner, or if there be more than one, any of them, resides.* The plaintiff shall file with his bill an itemized statement of his account, showing the amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, the balance due, and the time from which interest is claimed thereon, the correctness of which account shall be verified by the affidavit of himself, or his agent. When suit is brought for the enforcement of any such lien against the property bound thereby, all parties entitled to such liens upon the property or any portion thereof may file petitions in such suit asking for the enforcement of their respective liens to have the same effect as if an independent suit were brought by each claimant.

(Emphasis added). Code § 43-17, which governs the limitations period for filing a mechanics' lien action, reinforces that filing in the statutorily prescribed localities is a prerequisite to enforcement under § 43-22:

> No suit to enforce any lien perfected under §§ 43-4, 43-5 and 43-7 to 43-10 shall be brought after six months from the time when the memorandum of lien was recorded or after sixty days from the time the building, structure or railroad was completed or the work

- 13 -

thereon otherwise terminated, whichever time shall last occur; provided, however, *that the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the institution of a suit under this section*; and, provided further, that nothing herein shall extend the time within which such lien may be perfected.

(Emphasis added). "The text of these portions of Code §§ 43-17 and 43-22 has remained virtually unchanged since their simultaneous enactment by the General Assembly, Acts, 1893-94, c. 535 at 576. This common history dictates that each provision be interpreted in light of the other." *Commonwealth Mech. Contractors, Inc. v. Standard Fed. Sav. & Loan*, 222 Va. 330, 332 (1981). Both provisions, materially unchanged since 1894, stipulate procedures for lienors seeking to enforce their liens and must be read in harmony with each other.[10]

While minor procedural defects may not be fatal to an enforcement action, the time window and location for filing are not so forgiving. Code § 43-22 requires the filing of an "itemized account by affidavit," yet the Supreme Court has declined to hold related defects, including the failure to file such document, as a bar to enforcement. *See Herbert Bros., Inc. v. McCarthy Co. of Virginia-Maryland*, 220 Va. 907, 908 (1980) (discussing the relationship between Code § 43-22 and Rule 1:10); *see also Knight v. Ferrante*, 202 Va. 243, 248 (1960) ("There is no suggestion in [Code § 43-22] that particularity in the account is jurisdictional, or that lack of particularity is fatal and requires a dismissal of the claim.").

---

[10] The Supreme Court of Virginia has stated, "the mechanic's lien statute prescribes no form of procedure and suits to enforce the liens are to be conducted as other suits in equity to subject property to the payment of liens." *Finkel Outdoor Prods. v. Bell*, 205 Va. 927, 932 (1965) (citing *Monk v. Exposition Deepwater Pier Corp.*, 111 Va. 121 (1910)). These statements were made, however, in response to the absence of statutory language on proper and necessary parties to a suit. *Id.* at 931-32. Applying principles of due process, the Supreme Court has clarified that a trustee or beneficiary of the antecedent deed of trust must be named in an enforcement suit. *Walt Robbins, Inc. v. Damon Corp.*, 232 Va. 43, 44 (1986). Additionally, in *James T. Bush Construction Co. v. Amratlah R. Patel*, 243 Va. 84, 88 (1992), the Court ruled for the first time that a "trustee and beneficiary of a deed of trust recorded subsequent to the filing of the mechanic's lien but prior to the filing of the enforcement suit were necessary parties." *Heyward & Lee Constr. Co. v. Sands, Anderson, Marks & Miller*, 249 Va. 54, 58 (1995).

In contrast, a lienor must "take *affirmative action within a specific time period* to enforce its mechanic's lien as a prerequisite to recovering on the lien." *Isle of Wight Materials Co. v. Cowling Bros.*, 246 Va. 103, 106 (1993) (emphasis added). "Merely being named as a defendant in an enforcement action of another lienor is not the equivalent of either filing an independent suit or intervening in the suit of another." *Id.* The Supreme Court has consistently recognized the six-month filing period in Code § 43-17 as a jurisdictional requirement. *Donohoe Constr. Co.*, 235 Va. at 538; *see Neff v. Garrard*, 216 Va. 496, 497 (1975) ("Where, as here, a statute creates a right unknown at common law and makes a time limitation the essence of the right as well as a constriction upon the remedy, the right expires upon the expiration of the limitation; and the expiration of the right is an absolute defense."). *But see Isle of Wight Materials Co.*, 246 Va. at 106 (quoting *Commonwealth Mech. Contractors, Inc.*, 222 Va. at 332 (discussing cases which toll the limitations period)).

As to where to permissibly enforce a perfected lien, Code § 43-22 states it "may be enforced in a court of equity by a bill filed in the *county or city wherein the . . . structure . . . is situated, or wherein the owner . . . resides.*" (Emphasis added). ADO argues that the General Assembly's use of "may," rather than "must" or "shall," confers discretionary authority, permitting enforcement outside the jurisdictions listed. ADO also submits there is nothing in the statute suggesting that the enforcement action is jurisdictional. Both arguments are unpersuasive. "When statutory language is unambiguous, we are bound by the plain meaning of that language." *Britt Constr., Inc.*, 271 Va. at 62. "Therefore, when the General Assembly has used words of a definite import, we cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Id.* at 62-63. ADO's statutory construction, if accepted, would instruct courts to overlook the

fact that the jurisdiction of lien enforcement actions is directly connected to the location of the subject property and the owner of said property.

Code § 43-22 establishes a jurisdictional limitation by prescribing the trial court locality in which lien enforcement actions must be brought, and by necessary implication, prohibiting their institution elsewhere. Although Virginia law generally treats territorial jurisdiction as distinct from subject-matter jurisdiction—and therefore subject to waiver if not timely objected to, *see* Code § 8.01-258; *Porter v. Commonwealth*, 276 Va. 203, 229 (2008); *Texaco, Inc. v. Runyon*, 207 Va. 367, 370 (1966)—that distinction does not hold in the context of mechanics' lien enforcement suits.

In *Richmond Engineering & Manufacturing Corp. v. Loth*, 135 Va. 110, 158 (1923), the Supreme Court of Virginia held that territorial jurisdiction is not merely a venue requirement but a necessary condition for a court to exercise subject-matter jurisdiction over a lien enforcement suit. Relying on *Spiller v. Wells*, 96 Va. 598 (1899), and *Craig v. Hoge*, 95 Va. 275 (1897), the Supreme Court explained that "the institution of such a suit confers upon the court in which it is brought, *if that court has territorial jurisdiction*, exclusive jurisdiction of the subject matter and of all of the parties before the court in such suit." *Loth*, 135 Va. at 158 (emphasis added).

This interpretation is reinforced by Code § 43-17, which states that "the filing of a petition to enforce any such lien in any suit wherein such petition may be properly filed shall be regarded as the *institution* of a suit under this section." (Emphasis added). Read together, these provisions make clear that the statutory territorial requirement is not a matter of mere procedural convenience. Rather, compliance serves as a jurisdictional prerequisite; failure to satisfy this requirement deprives the court of the authority to hear the matter. *See*, *e.g.*, *Cabral v. Cabral*, 62 Va. App. 600, 607 (2013) (recognizing that some procedural requirements may function as jurisdictional preconditions akin to subject-matter jurisdiction).

ADO's mechanics' lien was filed in Alexandria, where the subject property is located and where Frykman resides. By its plain terms, Code § 43-22 requires that an action to enforce the lien must also be brought in Alexandria. Filing in Loudoun County was not merely an error of venue—it divested the trial court of statutory jurisdiction to entertain the lien enforcement action.

ADO's reliance on the contractual forum selection clause—designating Loudoun County as the venue for disputes related to the agreement—is unavailing. While forum selection clauses are generally enforceable under the "modern rule," *see Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990), such clauses must yield to contrary statutory mandates. *See Scholz v. Standard Acc. Ins. Co.*, 145 Va. 694, 704 (1926) (Where a contract is "in conflict with statutory provisions . . . it is well settled that the statute will prevail."); *Colbert v. Ashland Constr. Co.*, 176 Va. 500, 506 (1940) ("The general rule of law is that a contract made in violation of a statute is void."); *Whitfield v. Aetna Life Ins. Co.*, 205 U.S. 489, 496 (1907) ("Any contract inconsistent with . . . statute must be held void."). Here, the public policy expressed in Code § 43-22 overrides any private agreement to litigate in a different forum. Accordingly, the trial court did not err in sustaining Frykman's demurrer for lack of jurisdiction. This Court turns next to ADO's remaining arguments, which center on the trial court's treatment of ADO's damages evidence and the resulting nominal award.

B. *The trial court did not err in discounting ADO's expert testimony and awarding only nominal damages to ADO.*

ADO contends the trial court erred by disregarding Brinser's testimony about damages and further claims that this action of the court resulted in the erroneous award of only $1,000 in nominal damages against Frykman.[11] The judgments of a trial court sitting without a jury are

_____

[11] ADO submits that Brinser's testimony was "uncontradicted," but Frykman calls this "a gross distortion of the evidence at trial."

reviewed for clear error and thus will not be set aside unless plainly wrong or without supporting evidence. *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011).

"It is well established that the trier of fact ascertains [an expert] witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc). A trier of fact may "not arbitrarily or without any justification therefor give no weight to material evidence, which is uncontradicted and is not inconsistent with any other evidence in the case." *Spratley v. Commonwealth*, 154 Va. 854, 857 (1930). "What makes a factfinder's disregard of uncontradicted testimony arbitrary . . . is its palpable unreasonableness when considered in light of the totality of the evidence." *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 71 (2021). "A court can . . . disregard an uncontradicted statement that is flatly 'inconsistent with the facts in the record, or *when the background facts expressly or implicitly diminish the believability of the statement*." *Id.* (emphasis added) (quoting *Breckenridge v. Marval Poultry Co.*, 228 Va. 191, 195 (1984)).

Here, the trial court found that Frykman materially breached the contract when she issued a termination notice to ADO, thereby preventing ADO from fulfilling its obligations under the contract. The court nevertheless found that ADO failed to prove its claim of damages with reasonable certainty. The court noted that ADO's only evidence of damages came from testimony by Dean, Tonya, and their expert, Brinser, who ultimately accepted Tonya's cost estimates. The court deemed Brinser's testimony unpersuasive and "circular" and thereby discounted it.

This Court finds that there is sufficient evidence to support the trial court's decision. To start, Tonya's cost estimate of $225,174 was "based on information that was described, but was not presented to the [c]ourt." Tonya testified that the underlying job costing was not done contemporaneously. As for Brinser, although qualified by the trial court as an expert in corporate

accounting and small business accounting, he provided no opinion or independent report to the court. Brinser reviewed the project's receipts, bank statements, and credit card statements against the data entered into QuickBooks but conceded that the expenses and invoices could have been added post hoc.

Brinser further testified that he relied on reports generated by QuickBooks, showing direct costs, and CoConstruct, detailing direct costs and labor costs. The latter document contained mistakes, such as missing names for recorded hours and miscellaneous hours, that Brinser could neither explain nor verify. Significantly, when asked about his expertise in generating the reports, Brinser indicated that he merely "pushed [a] button" to access them. The court also noted that the documents relied on were not admitted into evidence. Finally, Brinser acknowledged, and the trial court observed, that he could not speak to the veracity of toll charges alleged by ADO.

On these facts, the trial court properly exercised its discretion in assigning little weight to Brinser's testimony, as it lacked adequate documentary support and depended heavily on the credibility of internal reports not admitted into evidence. While this Court agrees that a trial court may not arbitrarily disregard uncontradicted testimony, a court is not categorically forbidden from doing so, particularly when the testimony lacks corroboration or is internally inconsistent. *See Grayson*, 300 Va. at 71.

Under Virginia law, nominal damages are available in contract actions where a breach is established but damages are not proven with reasonable certainty. *Town & Country Props. v. Riggins*, 249 Va. 387, 399 (1995). That is precisely the scenario here. ADO carried its burden to prove a contract and a breach but failed to demonstrate the amount of loss attributable to that breach. Thus, the trial court did not err in disregarding Brinser's testimony and awarding only nominal damages to ADO.

*C. The trial court did not abuse its discretion in declining to award attorney fees to ADO because the absence of proven damages left no basis for determining that Frykman was in default on a payment obligation—a prerequisite for the awarding of attorney fees under the contract.*

ADO contends the trial court erred in denying its request for attorney fees under Paragraph 4 of the contract, arguing that it was the prevailing party and therefore entitled to recover. We review the trial court's decision to decline to award attorney fees "under the deferential abuse of discretion standard." *Sobol v. Sobol*, 74 Va. App. 252, 288 (2022).

Virginia follows the "American Rule," under which parties generally bear their own attorney fees unless a statute or contract provides otherwise. *Bolton v. McKinney*, 299 Va. 550, 554 (2021). Contracting parties may shift responsibility for attorney fees to the losing party through express provisions. *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006). To recover attorney fees, a party must both prevail and establish a contractual or statutory basis for the fee award. *See Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 428-29 (2012).

The Supreme Court of Virginia has long adopted the *Black's Law Dictionary* definition of "prevailing party": a "party in whose favor a judgment is rendered, regardless of the amount of damages." *West Square, L.L.C. v. Commc'n Techs.*, 274 Va. 425, 433 (2007) (quoting *Sheets v. Castle*, 263 Va. 407, 413 (2002)). This is especially pertinent in the context of breach of contract claims. Nominal damages may be appropriate where a legal right is violated but no actual, provable loss occurred. *Kerns v. Wells Fargo Bank, N.A.*, 296 Va. 146 (2018); *Riggins*, 249 Va. at 399; *see also Orebaugh v. Antonious*, 190 Va. 829, 834 (1950) ("[U]pon the breach of a valid and binding contract the law infers nominal damages."). Compensatory damages, or actual damages, are not presumed and must be proven with competent evidence. *Orebaugh*, 190 Va. at 834.

Finding that Frykman materially breached the contract at issue, the trial court awarded $1,000 in nominal damages in favor of ADO. The court also found that ADO did not breach the

contract. The trial court's factual findings are entitled deference, absent clear error. *See Rainey v. Rainey*, 74 Va. App. 359, 377 (2022); *see also Ferguson v. Stafford Cnty. Dep't of Soc. Servs.*, 14 Va. App. 333, 336 (1992) ("Where the record contains credible evidence in support of the findings made by [the trial] court, [this Court] may not retry the facts or substitute our view of the facts for those of the trial court."). Thus, the trial court's award of nominal damages makes ADO the prevailing party. The relevant analysis does not end here, as the trial court also had to determine whether a contractual basis existed that shifted attorney fees to the losing party. *See Batt*, 284 Va. at 428-29. Here, the trial court held that "the amount [in default] claimed by [ADO had] not been reasonably substantiated," and,

> *consequently where the [attorney] fees are linked to default in payment* and not just to the simple breach, the Court finds that because I don't know how possible it would have been for Ms. Frykman to satisfy the payment when it hasn't been substantiated, the Court finds that an award of [attorney] fees and cost is not appropriate.

(Emphasis added). The court's construction of the default provision presents a question of contract interpretation, which this Court reviews de novo. *McKinney*, 299 Va. at 554. This Court must construe the contract based on its plain meaning unless an ambiguity exists. *Brizzolara v. Sherwood Mem'l Park, Inc.*, 274 Va. 164, 180 (2007).

Paragraph 4 of the contract provides that, "[i]f at any time, Client shall be in default in the payment of any amounts due pursuant to this Contract, Contractor, at its sole option, may promptly institute a suit for collection of the amounts owed, under the terms of the Agreement." Further, "*In addition to the recovery of any indebtedness secured hereby*, Contractor shall be entitled to recover reasonable attorney's fees and expenses incurred in connection with bringing of any such collection and enforcement actions." (Emphasis added). This Court agrees that Paragraph 4 contemplates an award of attorney fees to ADO in the event of default by Frykman, but such award is due only *after* ADO recovers for defaulted payments. The trial court properly

- 21 -

recognized that the contract differentiates a breach (under Paragraph 10) from a default in payment (under Paragraph 4), which necessarily entails a failure to pay a sum certain. The court found that no such amount was proven to be owed by Frykman, and thus no default occurred. Accordingly, the trial court acted within its discretion in denying attorney fees because ADO failed to prove the factual predicate—payment default—required to trigger the contractual award of attorney fees.

## II. Frykman's Cross-Appeal

This Court next addresses Frykman's cross-appeal, which challenges multiple aspects of the trial court's findings, including its application of the contract's remedial provisions and the allocation of responsibility for the breach. Frykman maintains the trial court erred in failing to construe Paragraph 10 of the contract to require repayment of alleged overpayments; finding she was the first party to breach; awarding nominal damages to ADO; and denying her request for attorney fees.

A. *The trial court did not err in finding that Frykman was not entitled to receive a refund, as Paragraph 10 did not create a refund obligation for overpayments.*

Frykman contends that Paragraph 10 (Noncompletion of Agreement) of the agreement imposes a contractual "remedy" that requires ADO to return any overpayments made after calculating the damages owed to the parties. Paragraph 10 states,

> In the event Client prevents Contractor from performing the work or otherwise breaches this Agreement, Client shall be responsible [for] all cost of materials, fabrication, labor, permits, surveys and administrative expenses associated with preparation and/or partial performance of the work, in addition to any other remedies Contractor may have for breach of this Agreement.

We review questions of contract interpretation de novo. *McKinney*, 299 Va. at 554. "Contracts are construed as written, without adding terms that were not included by the parties. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain

- 22 -

meaning." *TM Delmarva Power v. NCP of Va.*, 263 Va. 116, 119 (2002) (citations omitted). "[C]ourts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein." *Wilson v. Holyfield*, 227 Va. 184, 187 (1984).

This provision does not limit ADO's recovery, nor does it obligate a refund of payments already made. Rather, it outlines the categories of expenses recoverable in the event Frykman breaches. As the trial court correctly held, Paragraph 10 "did not require accounting for expenses just because it talks about a remedy or a breach by a client." Frykman's argument, which asks the Court to read a restitutionary right into a provision granting remedies only to the contractor, is not supported by the plain language of the contract. Paragraph 10 contains no language entitling Frykman to a credit or reimbursement and no independent obligation to render a post-termination accounting. Thus, the trial court did not err in denying Frykman's claim.

B. *The trial court's finding that Frykman was the first to breach was not clearly erroneous.*

Frykman submits the trial court erred in finding that she was the first party to breach the contract. Under this argument, Frykman challenges specific rulings and factual findings of the trial court.

First, Frykman alleges that Dean anticipatorily breached the contract when he disclosed that ADO "would not complete the work by December 1, 2019," the estimated completion date of the agreement. The trial court held that "per the clear words of the contract," the deadline was not a requirement of the contract. This Court agrees. In addition to the date's label as "estimated," Paragraph 5 (Contractor's Liability for Delays) of the contract states, "*the commencement and completion dates are approximate only*, and are subject at all times to the effect of Delays." (Emphasis added). Applying the de novo standard, this Court finds that there is no ambiguity and thus, the contract must be upheld. *McKinney*, 299 Va. at 554.

Next, Frykman alleges that Dean repudiated the contract when he said, "you need to find somebody else to do the contract . . . and you need to replace me." Relying on the context of the statement—the conversation at Starbucks—the trial court concluded that the statement was not "an unambiguous statement" consenting to termination. Considering the clear error standard, this Court finds that there is sufficient evidence to support the trial court's decision. The trial court noted that Dean's statement "was in response to . . . Frykman's declaration that she needs to find someone to finish the job by Christmas." Again, the completion date under the agreement was not enforceable. The court found that "after this first statement was made, the discussion immediately turned to conversation" about the rain and the leak detected and moved on to "an attempt at problem solving regarding the work that needed to be done and how much time it would take." "Ultimately, the meeting ended with Mr. Baker saying, I'll see you on the job tomorrow, which, in the [c]ourt's view, is also not consistent with a consent to termination." These reasons support the trial court's ruling that ADO did not breach on this ground.

Lastly, Frykman alleges that a contract breach occurred when ADO issued false invoices and made demands for payments that were not yet due.[12] The trial court rejected this contention, finding that "[i]t's not something that was part of what was bargained for and promised in the contract." Frykman argues on appeal that the trial court erred in its ruling by failing to imply a covenant of good faith and fair dealing in the contract. While Frykman's argument regarding the implied covenant of good faith and fair dealing is not necessarily without merit, it ultimately fails under the applicable deferential standard of review. *See Gov't Emps. Ins. Co.*, 281 Va. at 655.

---

[12] Frykman also contends the "[t]rial [c]ourt failed to mention that the demands for payments were in conjunction with ADO's threat to walk off the job." This argument, however, is moot because Frykman's factual theory, comprising this detail, did not sufficiently show that ADO operated in bad faith.

Code § 8.1A-304, which recodifies former Code § 8.1-203, provides that "[e]very contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."[13] The Supreme Court of Virginia has alluded to the applicability of the covenant of good faith and fair dealing in certain non-UCC contexts, such as construction contracts. *See Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC*, 276 Va. 81, 92 (2008) ("There is no assertion or evidence in the record that [the contractor's] breach of the contract was willful or *the result of deliberate bad faith*." (emphasis added)); *see also Kirk Reid Co. v. Fine*, 205 Va. 778, 789-90 (1965) (discussing a building contract and holding that neither the record nor the Commissioner suggested "that the actions of the [contractor] even approached that modicum of bad faith" to foreclose recovery under the contract). Assuming without deciding that the contract at issue implied a covenant of good faith, the breach thereof by ADO was not proven by Frykman.

Frykman testified that, following the October meeting at Starbucks, she received a draw invoice and a message from Phuong Ngo ("Phuong"), who was acting on behalf of ADO. The message stated that "if [the draw invoice was] not paid in the same day or the next day, that the contract would be terminated, and [ADO] would walk off the job." Frykman testified that she was "surprised to see the amount due" because a "certain milestone in the project," namely the framing inspection, had not been reached. She also recalled never receiving a communication

---

[13] A "breach of the implied duty under the U.C.C. gives rise only to a cause of action for breach of contract," and not an independent tort. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33 (1996). "When . . . parties to a contract create valid and binding rights, one party does not breach the . . . obligation of good faith by exercising such rights." *Id.* at 35. "This is so under either the common law or the Uniform Commercial Code." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 384 (1997). "Generally, such a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.* "The duty of good faith does not prevent the exercise of contractual rights but rather limits the exercise of contractual discretion." *Tedders v. Bank of Am., N.A.*, 92 Va. Cir. 33, 37 (Colonial Heights 2015) (citing *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998)).

withdrawing the invoice. Dean acknowledged awareness of Phuong's message but denied authoring or directing it. Tonya testified that Phuong, a temporary hire, sent a message stating that "there was . . . $86,874.13 . . . invoiced and if [Frykman] didn't pay immediately, [ADO would] walk off the job." She testified the message was sent "before that invoice was actually due, so that was an error on her part." She further explained that no one told Phuong to send the message and that the statement was prepared

> with anticipation that maybe that's the thing that we were going to have to send it but it was sent before it was supposed to be sent and . . . we didn't tell her to send that at that time because that wouldn't have been the right time to send that.

When asked whether Frykman was notified that the message was made in error, she replied, "I think that we . . . [were] no longer communicating at that point."

In *Virginia-Carolina Chemical Co. v. Carpenter*, 99 Va. 292, 293 (1901), the Supreme Court of Virginia stated, "To act in bad faith is to act fraudulently, and . . . it is an established principle that a charge of fraud or bad faith must be clearly and distinctly proven." In this case, "[t]here [was] no assertion or evidence in the record that [ADO's] breach of the contract was willful or the result of deliberate bad faith." *Nichols Constr. Corp.*, 276 Va. at 92. The testimony of Dean and Tonya indicates that both the invoice and payment request submitted by Phuong were the product of mistake, not fraud. Accordingly, even if the trial court erred in suggesting that the contract needed an express prohibition on false invoicing, its ultimate finding that ADO did not breach was not plainly wrong.[14] Under *Carpenter*, bad faith must be clearly and distinctly proven—an evidentiary burden Frykman did not meet. 99 Va. at 293.

---

[14] "In instances where a trial court's decision is correct, but its reasoning is incorrect, and the record supports the correct reason, we uphold the judgment pursuant to the right result for the wrong reason doctrine." *Haynes v. Haggerty*, 291 Va. 301, 305 (2016). "This Court may uphold a judgment even when the correct reasoning is not mentioned by a party in trial argument or by the trial court in its decision, as long as the record contains sufficient information to support the proper reason." *Id.*

Consequently, the trial court did not err in finding that Frykman terminated the contract without cause and was thus the first party to breach the contract.

## C. *The award of nominal damages to ADO was proper as already noted.*

Frykman submits the trial court should not have awarded even nominal damages because ADO failed to prove actual harm and because, she claims, the evidence showed ADO was unjustly enriched. But the trial court determined that ADO carried its burden to prove the formation of a valid contract and a breach by Frykman. That finding, coupled with the failure to establish specific damages, supports an award of nominal damages under Virginia law as already discussed hereinabove. *See Riggins*, 249 Va. at 399.

## D. *Frykman was not entitled to attorney fees.*

Frykman contends the trial court failed to conduct a proper prevailing party analysis under Paragraph 15(c) of the contract, which allows the "successful or prevailing party" to recover reasonable attorney fees. To the extent attorney fees were available in this dispute, they were only for enforcement of "any legal action . . . brought for the enforcement of this Agreement." As noted earlier, Frykman did not prevail on her counterclaim for breach of contract and her defenses were not based on contract enforcement. While Frykman succeeded on some procedural points (e.g., dismissal of the lien count via demurrer), she did not prevail on the merits of any claim or counterclaim under the contract. In addition, Frykman, "[t]he first party to materially breach [the] contract cannot enforce it." *Denton v. Browntown Valley Assocs.*, 294 Va. 76, 88 (2017). Therefore, the trial court's refusal to award her fees was not an abuse of discretion.

## CONCLUSION

In sum, the trial court's judgment reflects sound legal analysis and a measured application of the evidence. In a ruling of first impression, the court properly sustained

Frykman's demurrer to the mechanics' lien claim under Code § 43-22, determining that the statute's filing requirements cannot be displaced by a contractual forum selection clause. The court acted within its discretion in awarding only nominal damages when ADO failed to prove its alleged losses with reasonable certainty, and the court, as the finder of fact, could certainly discount expert testimony that it found to be speculative and unsubstantiated. The court also properly denied ADO's request for attorney fees, finding no credible evidence that Frykman defaulted on a payment obligation. As for Frykman's cross-appeal, the court rightly concluded that the contract imposed no obligation on ADO to refund alleged overpayments, that Frykman was the first to breach the contract, and that her failure to prevail on any substantive contractual claim precluded an award of attorney fees.

Accordingly, finding no reversible error, we affirm the judgment of the trial court in its entirety.

*Affirmed*.